144 Cal.App.3d 888 (1983)
193 Cal. Rptr. 733
JAMES A. MYERS, Plaintiff and Appellant,
v.
WILLIAM O. QUESENBERRY et al., Defendants and Respondents.
Docket No. 26873.
Court of Appeals of California, Fourth District, Division One.
June 27, 1983.
*889 COUNSEL
Mathews, Bergen, Potash & Grier and John C. Grier for Plaintiff and Appellant.
Rhoades, Hollywood & Neil and Daniel S. Belsky for Defendants and Respondents.
*890 OPINION
WIENER, J.
The question presented in this case is whether liability may be imposed against two physicians for negligently failing to warn their patient of the foreseeable and dangerous consequences of engaging in certain conduct which proximately caused injuries to plaintiff, a third person.
Lexandria Anne Hansen lost control of her car and struck James A. Myers. Myers sued Hansen's doctors, William O. Quesenberry and Michael J. Beaumont, for negligently failing to prevent Hansen from driving. The doctors' demurrer to Myers' first amended complaint was sustained without leave to amend.[1] (1a) We conclude that ruling was correct to the extent Myers based his action on the doctors' alleged failure to control Hansen's conduct. However, we hold Myers' complaint states an action against the doctors for negligently failing to warn Hansen against driving in an uncontrolled diabetic condition complicated by a missed abortion.[2] Therefore, we reverse the judgment of dismissal entered on the order sustaining the doctors' demurrer.

Facts and Allegations
The discussion which follows assumes the truth of the factual allegations of Myers' complaint. (Landeros v. Flood (1976) 17 Cal.3d 399, 407-408 [131 Cal. Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324].) In April 1980 Quesenberry and Beaumont began treating Hansen for diabetes and pregnancy. The doctors knew Hansen's diabetes had seriously affected two previous pregnancies, resulting in caesarean sections in both and two hospitalizations and a stillbirth in the first. On July 19 the doctors discharged Hansen from Pomerado Hospital with her diabetes unstabilized. Beaumont examined Hansen on July 27. Hearing no fetal heart tones, he asked her to return in one week for further examination. Quesenberry examined Hansen on August 5. He also heard no heart tones and observed Hansen's uterus had substantially diminished in size. Quesenberry advised Hansen to have the dead fetus removed within 18 hours. Hansen reacted by becoming emotionally upset. The doctors then directed Hansen to drive immediately to Pomerado Hospital for preliminary laboratory tests. Hansen lost control of her *891 car due to a diabetic attack and struck Myers as he was standing by the side of the road. The complaint does not clearly state whether the collision occurred between the doctors' office and the hospital or after Hansen left the hospital.
According to Myers' complaint, Quesenberry and Beaumont negligently failed to control Hansen's conduct by permitting her to drive to and from Pomerado Hospital on August 5, and negligently failed to warn her not to drive in an irrational and uncontrolled diabetic condition. Myers also alleges Hansen's diabetic attack and resulting collision with him were foreseeable to the doctors, and their negligence proximately caused his damages.

Discussion
(2) It is a fundamental principle of tort law that defendants are liable for injuries caused by their failure to exercise reasonable care. (Civ. Code, § 1714, subd. (a); Thompson v. County of Alameda (1980) 27 Cal.3d 741, 750 [167 Cal. Rptr. 70, 614 P.2d 728, 12 A.L.R. 4th 701]; Rowland v. Christian (1968) 69 Cal.2d 108, 112-113 [70 Cal. Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Some courts, however, invoke the concept of "duty" to limit negligence liability: "... the law requires more than a mere failure to exercise care and a resulting injury. There must be a legal duty to exercise care under the circumstances, owed to the person injured, and a breach of that duty must be the proximate cause of the resulting injury. [Citations.] Thus, the determination that a duty of care exists is an essential precondition to liability founded on negligence. [Citations.]" (Hooks v. Southern Cal. Permanente Medical Group (1980) 107 Cal. App.3d 435, 443 [165 Cal. Rptr. 741].) In confronting such statements we should "... bear in mind that legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. As stated in Dillon v. Legg (1968) 68 Cal.2d 728, 734 [69 Cal. Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]: `The assertion that liability must ... be denied because defendant bears no "duty" to plaintiff "begs the essential question  whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.... [Duty] is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts [3d ed. 1964] at pp. 332-333.)'" (Tarasoff v. Regents of University of California, supra, 17 Cal.3d at p. 434.) The question of negligence liability is more accurately analyzed when the word "duty" is eliminated, with the focus solely on the issue of whether liability should be imposed. This issue, in turn, is best analyzed by determining whether public policy considerations justify making an exception to the general rule of liability. (See Rowland v. Christian, supra, 69 *892 Cal.2d at p. 112; see also Elam v. College Park Hospital (1982) 132 Cal. App.3d 332, 338, fn. 7, 339-340 [183 Cal. Rptr. 156], mod. 133 Cal. App.3d 94a; Smith v. Alameda County Social Services Agency (1979) 90 Cal. App.3d 929, 935-936 153 Cal. Rptr. 712].)
(1b) Here, a threshold policy consideration is whether negligence liability should be imposed for nonfeasance. The common law has traditionally been reluctant to impose such liability because of the difficulties of setting standards for altruistic behavior. (Tarasoff v. Regents of University of California, supra, 17 Cal.3d at p. 435, fn. 5) "... [W]hen the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim." (Id., at p. 435; but see Soldano v. O'Daniels (1983) 141 Cal. App.3d 443 [190 Cal. Rptr. 310].) A "special relationship" exists between a doctor and a patient. (Tarasoff v. Regents of University of California, supra, 17 Cal.3d at p. 436.) "Such a relationship may support affirmative duties for the benefit of third persons. Thus, for example, a hospital must exercise reasonable care to control the behavior of a patient which may endanger other persons. A doctor must also warn a patient if the patient's condition or medication renders certain conduct, such as driving a car, dangerous to others." (Ibid., fns. omitted; see also Davidson v. City of Westminster (1982) 32 Cal.3d 197, 204 [185 Cal. Rptr. 252, 649 P.2d 894].)
The last sentence quoted above, while dictum in the Tarasoff context, is directly on point here and touches on a second important policy consideration: foreseeability. (Rodriguez v. Bethlehem Steel Corp. (1974) 12 Cal.3d 382, 399 [115 Cal. Rptr. 765, 525 P.2d 669]; Dillon v. Legg, supra, 68 Cal.2d 728, 739 [69 Cal. Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Defendants will be held liable only for those injuries which are the foreseeable consequence of their negligence. (Ibid.) (3) Foreseeability presents questions of fact for the jury. (Weirum v. RKO General, Inc. (1975) 15 Cal.3d 40, 46 [123 Cal. Rptr. 468, 539 P.2d 36]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 492, p. 2755.) (1c) We cannot say as a matter of law that the danger Hansen's driving presented to Myers and other persons along the way to and from Pomerado Hospital was unforeseeable to Quesenberry and Beaumont. (See Harland v. State of California (1977) 75 Cal. App.3d 475, 489-490 [142 Cal. Rptr. 201], conc. and dis. opn. of Rattigan, J.) Furthermore, the fact Myers was a foreseeable but not a readily identifiable victim of Hansen's driving does not preclude him from stating an action against the doctors for negligently failing to warn her not to drive in an irrational and uncontrolled diabetic condition. As a practical matter, the doctors here could not have effectively warned Myers of the *893 danger presented by Hansen's driving. (See Thompson v. County of Alameda, supra, 27 Cal.3d at p. 758; compare Tarasoff v. Regents of University of California, supra, 17 Cal.3d at pp. 433-439, 442.) However, they could easily have warned Hansen not to drive because of her irrational and uncontrolled diabetic condition. Under the facts as alleged here, this probably would not have been a futile act. Having otherwise complied with her doctors' professional recommendations, Hansen presumably would have continued to follow their advice had they warned her not to drive. Hansen is unlike the homicidal actors in Thompson and Tarasoff or the suicidal actor in Johnson v. County of Los Angeles (1983) 143 Cal. App.3d 298 [191 Cal. Rptr. 704]. On these pleadings, we cannot factually presume Hansen would have ignored the doctors' warning. Thus, under these circumstances where warning the actor is a reasonable step to take in the exercise of the standard of care applicable to physicians (see post), liability is not conditioned on potential victims being readily identifiable as well as foreseeable. (Compare Thompson v. County of Alameda, supra, 27 Cal.3d at pp. 752-753, 758; Mavroudis v. Superior Court (1980) 102 Cal. App.3d 594, 599-601 [162 Cal. Rptr. 724].)
A third policy consideration involves the proper relationship between the public and the medical profession. Responding to what came to be known as the "medical malpractice crisis," the Legislature in 1975 enacted the Medical Injury Compensation Reform Act (MICRA). (Stats. 1975, Second Ex. Sess. 1975-1976, ch. 1, p. 3949 et seq.) MICRA enacted reforms in three basic areas: medical quality assurance, medical malpractice insurance and medical malpractice litigation. (See generally ibid.) In the third area MICRA focused on four basic concerns: time limitations (see Code Civ. Proc., §§ 340.5, 364-365); damages (see Civ. Code, §§ 3333.1-3333.2; Code Civ. Proc., § 667.7); attorney fees (see Bus. & Prof. Code, § 6146); and arbitration (see Code Civ. Proc., § 1295). MICRA did not change the types of actions plaintiffs can bring against doctors. Stated another way, MICRA's changes with respect to medical malpractice litigation were procedural and economic, not substantive. MICRA did not change the applicability or scope of Civil Code section 1714, subdivision (a) as between the public and the medical profession.
Finally, we wish to stress that several policies which weighed against the imposition of negligence liability in other cases are not pertinent in this case. The defendants here are not public institutions, officials or employees. Consequently, concerns over governmental immunity and the impairment of public functions play no part in our analysis. (Compare Davidson v. City of Westminster, supra, 32 Cal.3d 197; Thompson v. County of Alameda, supra, 27 Cal.3d 741.) Nor are we concerned here with any chilling effects which the imposition of liability might have on the exercise of First Amendment *894 rights. (Compare Bill v. Superior Court (1982) 137 Cal. App.3d 1002 [187 Cal. Rptr. 625].) There also are no significant practical problems involved here in requiring physicians to warn patients not to engage in foreseeably dangerous conduct. (Compare Davidson v. City of Westminster, supra, 32 Cal.3d 197; Thompson v. County of Alameda, supra, 27 Cal.3d 741; Bill v. Superior Court, supra, 137 Cal. App.3d 1002.) Our holding does not require the physician to do anything other than what he was already obligated to do for the protection of the patient. (See Tarasoff v. Regents of University of California, supra, 17 Cal.3d at p. 437.) Thus, even though it may appear that the scope of liability has been expanded to include injuries to foreseeable victims other than the patient, the standard of medical care to the patient remains the same.
To avoid liability in this case, Quesenberry and Beaumont should have taken whatever steps were reasonable under the circumstances to protect Myers and other foreseeable victims of Hansen's dangerous conduct. (Tarasoff v. Regents of University of California, supra, 17 Cal.3d at pp. 431, 439.) What is a reasonable step to take will vary from case to case. (Ibid.) When a physician furnishes medicine causing drowsiness, he should warn his patient not to drive or engage in other activities which are likely to cause injury. (See Harland v. State of California, supra, 75 Cal. App.3d at p. 482; compare the Legislature's response to related issues in the dramshop context, at Civ. Code, § 1714, subd. (b).) Similarly, if a physician knows or should know a patient's condition will impair her mental faculties and motor coordination, a comparable warning is appropriate. We cannot say as a matter of law here that telling Hansen not to drive in an irrational and uncontrolled diabetic condition would have been an unreasonable step for Quesenberry and Beaumont to take. (See Tarasoff v. Regents of University of California, supra, 17 Cal.3d at p. 436.) Their alleged failure to give such a warning is a sufficient legal basis for Myers' action against them.[3]
The focus of our discussion has been on the concept of "duty," i.e., whether on these pleadings liability can be imposed. In one sense the issue of causation has been subsumed in our analysis because we are satisfied there is a sufficient nexus between the physicians' conduct and the injuries suffered to impose liability. (Tarasoff v. Regents of University of California, supra, 17 Cal.3d at p. 434, citing cases including Biakanja v. Irving (1958) *895 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358].) Our decision should not be construed, however, as suggesting potential liability vis-a-vis "duty" and proximate causation present the same issue. Looking to the latter element, the defendants here will be held liable only for those injuries proximately caused by their negligence. (See Hoyem v. Manhattan Beach City Sch. Dist. (1978) 22 Cal.3d 508, 514 [150 Cal. Rptr. 1, 585 P.2d 851]; Peter W. v. San Francisco Unified Sch. Dist. (1976) 60 Cal. App.3d 814, 820 [131 Cal. Rptr. 854].) (4) As with foreseeability, proximate causation presents questions of fact for the jury. (Morales v. Field, DeGoff, Huppert & MacGowan (1979) 99 Cal. App.3d 307, 317 [160 Cal. Rptr. 239]; 4 Witkin, Summary of Cal. Law, supra, Torts, § 492, p. 2755.) Quesenberry and Beaumont will be liable only if Myers is able to prove their failure to warn Hansen not to drive in an irrational and uncontrolled diabetic condition was a substantial factor in causing his injuries. (Vesely v. Sager (1971) 5 Cal.3d 153, 163-164 [95 Cal. Rptr. 623, 486 P.2d 151]; Rest. 2d Torts, § 431.)[4]

Disposition
Judgment reversed.
Brown (Gerald), P.J., and Work, J., concurred.
NOTES
[1] Myers improperly appeals from the order sustaining the demurrer. We amend the order to incorporate a judgment of dismissal and treat the appeal as from the judgment. (McGee v. Weinberg (1979) 97 Cal. App.3d 798, 800 [159 Cal. Rptr. 86]; Bellah v. Greenson (1978) 81 Cal. App.3d 614, 618, fn. 1 [146 Cal. Rptr. 535].)
[2] "`It is axiomatic that if there is a reasonable possibility that a defect in the complaint can be cured by amendment or that the pleading liberally construed can state a cause of action, a demurrer should not be sustained without leave to amend.' [Citations.]" (Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425, 432, fn. 3 [131 Cal. Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)
[3] We reject Myers' theory Quesenberry and Beaumont may be liable for negligently failing to control Hansen's conduct by permitting her to drive to and from Pomerado Hospital on August 5. If liability cannot be imposed for such nonfeasance in a quasi-custodial setting as in Harland v. State of California, supra, 75 Cal. App.3d at pp. 480-482, it certainly cannot be imposed in a more conventional doctor-patient relationship as was present here. (Id., at pp. 491-492, conc. and dis. opn. of Rattigan, J.)
[4] We have purposefully cited Vesely because the Legislature responded to that decision by enacting Civil Code section 1714, subdivision (b) in response to what it concluded was an unwarranted extension of liability in the dramshop context. Whether the medical-legal aspects of this decision warrant similar action is again best left to the Legislature.