# Charles and Margaret Peck v. The Counseling Service of Addison County, Inc.

[499 A.2d 422]

No. 83-062

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed June 14, 1985

Motion for Reargument Denied August 5, 1985

*Charity A. Downs* of *Conley & Foote* and *Jon C. Stahl* of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiffs-Appellants.

*Priscilla K. Reidinger* and *Robert A. Mello* of *Downs Rachlin & Martin*, Burlington, and *Sessions, Keiner & Dumont*, Middlebury, for Defendant-Appellee.

*William B. Gray* and *Michael G. Furlong* of *Sheehey, Brue & Gray*, Burlington, for amicus curiae Vermont Psychiatric Association.

*Philip H. Zalinger, Jr.*, of *Paterson, Walke & Pratt, P.C.*, Montpelier, for amicus curiae Vermont Council of Community Mental Health Services, Inc.

**Hill, J.** Plaintiffs-appellants appeal from a judgment order of the Addison Superior Court that found the defendant-appellee, The Counseling Service of Addison County, Inc. (hereinafter Counseling Service)[1] not liable in negligence to the plaintiffs, and dismissing the plaintiffs' cause of action with prejudice. Because we hold that a mental health professional[2] has a duty to take reasonable steps to protect third persons from threatened physical harm posed to them by his or her patient, we reverse.

The pertinent facts are as follows. During the night of June 27, 1979, John Peck, age twenty-nine, son of the plaintiffs, set fire to the plaintiffs' barn.[3] The barn, located 130 feet from the plaintiffs' house, was completely destroyed. At the time of this incident, John Peck was an outpatient of the Counseling Service, under the treatment of one of defendant's counselor-psychotherapists.[4] On June 20, 1979, John, who was living at home with the plaintiffs, had had an argument with his father. During this argument, his father called him "sick and mentally ill" and told him he should be hospitalized. John packed his suitcase and left home. He arrived at the Counseling Service and told his therapist that he had had a fight with his father, that he was upset with his father, and that "he didn't think his father cared about him or respected him." The therapist arranged for John to stay at the home of John's grandparents and scheduled a counseling session for the next day, June 21. At the June 21st session, John was still angry with his father. At the start of the next counseling session on June 26, John asked his therapist if they could continue to discuss his feelings about his father. John told his therapist that

---

[1] Defendant is a Vermont nonprofit corporation, designated a mental health agency pursuant to 18 V.S.A. § 8907.

[2] 18 V.S.A. § 7101(13) (Supp. 1984) defines a mental health professional as "a person with professional training, experience and demonstrated competence in the treatment of mental illness, who shall be a physician, psychologist, social worker, nurse or other qualified person designated by the commissioner."

[3] The trial court concluded that if the law of Vermont did require a duty to warn, then a warning would be required on the facts of this case even though the threat to the plaintiffs was one of arson to their property rather than of physical harm to their persons. We agree. Arson is a violent act and represents a lethal threat to human beings who may be in the vicinity of the conflagration.

[4] The therapist was a mental health professional within the definition in 18 V.S.A. § 7101(13). Between September, 1976, and October, 1977, John Peck had attended therapy sessions, with the same therapist, on a weekly basis. From October, 1977, until June, 1979, John worked in a vocational workshop in Rutland and was not a patient of the Counseling Service.

he "wanted to get back at his father." In response to a question by the therapist about how he would get back at his father, John stated, "I don't know, I could burn down his barn." After the therapist and John discussed the possible consequences of such an act, John, at the request of the therapist, made a verbal promise not to burn down his father's barn. Believing that John would keep his promise, the therapist did not disclose John's threats to any other staff member of the Counseling Service or to the plaintiffs.

The plaintiffs brought this action in superior court to recover damages for their property loss which they claim resulted from the defendant's negligence. Plaintiffs' complaint contains two counts. The first count alleges negligence on the part of the defendant in failing to take reasonable steps to protect the plaintiffs from the threat posed by their son. The second count alleges professional malpractice.

Defendant moved to dismiss the plaintiffs' complaint on the grounds that it failed to state a claim upon which relief can be granted. V.R.C.P. 12(b)(6). By agreement of the parties, this motion was treated as a V.R.C.P. 56 motion for summary judgment. V.R.C.P. 12(b). The trial court denied defendant's motion by concluding that there was a genuine issue as to material facts which required resolution before a determination could be made on whether a duty was owed to the plaintiffs, and thus, whether the plaintiffs' complaint stated a cause of action. Defendant then moved for permission to take an interlocutory appeal which motion was denied. The case proceeded to a trial by court. Following the trial, the court issued extensive findings of fact and conclusions of law on all the material issues. The court then dismissed the case with prejudice because it determined that under current Vermont law there was no basis to find that the defendant owed a duty to take action to protect the plaintiffs.

The plaintiffs argue that the defendant, by and through its employees, knew or should have known, in accordance with the prevailing standards of the mental health profession, that John Peck represented an unreasonable risk of harm to them. Plaintiffs further contend that by its failure "to take steps that were reasonably necessary to protect" the plaintiffs, the defendant breached a duty of care owed to them.

■ Generally, there is no duty to control the conduct of another in order to protect a third person from harm. Restatement

(Second) of Torts § 315 (1965). A recognized exception to this general rule arises in the situation "where there is . . . a special relationship between two persons which gives the one a definite control over the actions of the other . . . ." Harper & Kime, *The Duty To Control the Conduct of Another*, 43 Yale L.J. 886, 895 (1934). An exception also arises where a special relationship exists which imposes a duty upon one to control the actions of another, Restatement, *supra*, § 315(a), or, where a special relationship gives a third person a right to protection. *Id.* at § 315(b).

Defendant contends that the relationship between a community mental health agency and a voluntary outpatient does not give rise to a duty to protect third persons because of the absence of control over the outpatient. See, e.g., *Hasenei v. United States*, 541 F. Supp. 999, 1009-10 (D. Md. 1982) (relationship between psychiatrist and voluntary outpatient typically lacks sufficient element of control necessary to create duty to protect third person, and lack of control is often encouraged); see also Stone, *The Tarasoff Decisions: Suing Psychotherapists to Safeguard Society*, 90 Harv. L. Rev. 358, 366 (1976) (therapist seeing outpatient has no control over patient).

■■ Whether or not there is actual control over an outpatient in a mental health clinic setting similar to that exercised over institutionalized patients, the relationship between a clinical therapist and his or her patient "is sufficient to create a duty to exercise reasonable care to protect a potential victim of another's conduct." *Tarasoff v. Regents of the University of California*, 17 Cal. 3d 425, 435, 551 P.2d 334, 343, 131 Cal. Rptr. 14, 23 (1976). Vermont already recognizes the existence of a special relationship between a physician and a patient that imposes certain legal duties on the physician for the benefit of third persons. Physicians, health officials and health institutions are required, in patient cases of venereal and other contagious diseases, to warn others in order to protect the public health. 18 V.S.A. §§ 1001, 1004, 1007, 1041, 1092, 1101. We see no reason why a similar duty to warn should not exist when the "disease" of the patient is a mental illness that poses an analogous risk of harm to others. E.g., *McIntosh v. Milano*, 168 N.J. Super. 466, 489-90, 403 A.2d 500, 512 (Law Div. 1979).

■ Defendant also argues that a duty to take action to protect third persons should not be imposed on a therapist because a therapist is no better able than anyone else to predict future vio-

lent behavior. Cocozza & Steadman, *The Failure of Psychiatric Predictions of Dangerousness: Clear and Convincing Evidence,* 29 Rutgers L. Rev. 1084 (1976). This Court recognizes the difficulty of predicting whether "a particular mental patient may pose a danger to himself or others. This factor alone, however, does not justify barring recovery in all situations. The standard of care for [mental] health professionals adequately takes into account the difficult nature of the problem facing [them]." *Lipari* v. *Sears, Roebuck & Co.,* 497 F. Supp. 185, 192 (D. Neb. 1980).

■ Defendant states that John's therapist, acting as a reasonably prudent counselor, "concluded in good faith that John Peck would not burn his parent's [sic] barn." The trial court nonetheless found that the therapist was negligent, and did not act as a reasonably prudent counselor, because her good faith belief was based on inadequate information and consultation. Sufficient evidence was presented to the court to support this finding.

Plaintiffs' psychiatric expert testified that, given (1) John's past history of impulsive assaultive behavior, (2) his medical treatment for the control of epilepsy, (3) the possibility of a brain disorder, associated with epilepsy, that increasingly diminished John's capacity for exercising good judgment, and (4) his past alcohol abuse, all of which were known to the therapist, the failure to reveal John's threat was inconsistent with the standards of the mental health profession. The evidence also revealed that at the time of John's threat the therapist was not in possession of John's most recent medical history. The Counseling Service did not have a cross-reference system between its therapists and outside physicians who were treating the medical problems of its patients. Nor did the Counseling Service have any written policy concerning formal intrastaff consultation procedures when a patient presented a serious risk of harm to another. The defendant's own expert testified that a therapist cannot make a reasonable determination of a patient's propensity for carrying out a threatened act of violence without knowledge of the patient's complete medical history.

■ Our decision today requires only that "the therapist . . . exercise 'that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of [that professional specialty] under similar circumstances.'" *Tarasoff, supra,* 17 Cal. 3d at 438, 551 P.2d at 345, 131 Cal. Rptr. at 25 (citations omitted). Once a therapist determines, or, based on the standards of

the mental health professional community, should have determined that his or her patient poses a serious risk of danger to another, then he or she has the duty to take whatever steps are reasonably necessary to protect the foreseeable victim of that danger. "While the discharge of this duty of due care will necessarily vary with the facts of each case, in each instance the adequacy of the therapist's conduct must be measured against the traditional negligence standard of the rendition of reasonable care under the circumstances." *Id.* at 439, 551 P.2d at 345, 131 Cal. Rptr. at 25 (footnote omitted). The trial court found, that on the facts of this case, the therapist's failure to warn the identified victims of John's threat constituted a breach of the duty to take reasonable steps to protect them.

█ Defendant also argues that the therapist could not lawfully have warned the plaintiffs of John's threat because of the physician-patient privilege against disclosure of confidential information. 12 V.S.A. § 1612(a). We are aware of the crucial role that confidentiality performs between therapists and patient in establishing and maintaining the "tenuous therapeutic alliance." Stone, *The Tarasoff Decisions: Suing Psychotherapists to Safeguard Society, supra*, 90 Harv. L. Rev. at 369. Defendant points out that the legislature has specified certain "public policy" exceptions to the physician-patient privilege, see, e.g., 33 V.S.A. §§ 683-684 (Supp. 1984) (report of child abuse), 13 V.S.A. § 4012 (disclosure of gunshot wounds), 18 V.S.A. §§ 1152-1153 (report of abuse of the elderly), and that a therapist's duty to disclose the risk of harm posed by his or her patient to a foreseeable victim is not a recognized legislative exception. Given this, defendant argues that this Court is preempted from finding a duty-to-warn exception to the physician-patient privilege. The statutory exceptions to the physician-patient privilege indicate to this Court, however, that the privilege is not sacrosanct and can properly be waived in the interest of public policy under appropriate circumstances. A mental patient's threat of serious harm to an identified victim is an appropriate circumstance under which the physician-patient privilege may be waived. This exception to the physician-patient privilege is similar to that recognized in the attorney-client relationship when a client informs an attorney of his or her intent to commit a crime. Code of Professional Responsibility, 12 V.S.A., App. IX, DR 4-101(C)(3) (attorney may reveal client's intent to commit a crime). However, "the therapist's obligations to

his patient require that he not disclose a confidence unless such disclosure is necessary to avert danger to others, and even then that he do so discretely, and in a fashion that would preserve the privacy of his patient to the fullest extent compatible with the prevention of the threatened danger." *Tarasoff, supra,* 17 Cal. 3d at 441, 551 P.2d at 347, 131 Cal. Rptr. at 27. In the same manner that due care must be exercised in the therapist's determination of what steps may be necessary to protect the potential victim of a patient's threat of harm, so too must due care be exercised in order to insure that only that information which is necessary to protect the potential victim is revealed.

■ Thus, we hold that a mental health professional who knows or, based upon the standards of the mental health profession, should know that his or her patient poses a serious risk of danger to an identifiable victim has a duty to exercise reasonable care to protect him or her from that danger.

■ Finally, plaintiffs argue that the trial court erred when it found them fifty percent comparatively negligent in causing their barn and its contents to be destroyed. This issue is not extensively briefed; plaintiffs seem to challenge the sufficiency of the evidence to support the court's findings. The court found that the plaintiffs were aware of their son's proclivity to violent behavior. It also found that the plaintiffs knew or should have known that their actions would cause their son to become angry and that when he was angry he was capable of violent acts. A review of the record reveals that the evidence presented, when viewed in the light most favorable to the prevailing party, was sufficient to support these findings. They will therefore not be set aside. See *A. G. Anderson Co.* v. *Chittenden Cider Mill,* 144 Vt. 289, 291, 475 A.2d 1085, 1086 (1984).

*Cause remanded for entry of judgment consistent with this opinion and the findings of the trial court.*

**Underwood, J.,** concurring. I concur in the result reached by the majority but cannot join in the opinion of Justice Hill.

**Billings, C.J.,** dissenting. I must dissent from the majority opinion since under the state of the law as it now exists in Vermont the judgment of the trial court should be affirmed.

At common law a person has no duty to control the conduct of another, or to warn third parties endangered by such conduct. Restatement (Second) of Torts § 315 (1965); W. Prosser, Law of Torts ¶ 56 (5th ed. 1984); *State* v. *Joyce*, 139 Vt. 638, 641, 433 A.2d 271, 273 (1981). A recognized exception to the general rule arises if the defendant has power to control the actions of the other. Harper & Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 895 (1934). Foreseeability of harm is fundamental, *Dodge* v. *McArthur*, 126 Vt. 81, 83, 223 A.2d 453, 454 (1966), and there is no duty to prevent harm or warn thereof when the harm is not foreseeable. *Rivers* v. *State*, 133 Vt. 11, 14, 328 A.2d 398, 400 (1974). A mental health professional's power to control a voluntary patient (18 V.S.A. § 7611 et seq.) is limited to initiating proceedings for involuntary commitment to patients posing a danger to themselves. 18 V.S.A. § 7101(17). It is scientifically recognized that it is impossible to predict future violent behavior. The professional's duty is to the patient, and not to others. See Cocozza & Steadman, *Predictions in Psychiatry; An Example of Misplaced Confidence in Experts*, 25(3) Soc. Probs. 265 (1978); Cocozza & Steadman, *The Failure of Psychiatric Predictions of Dangerousness: Clear and Convincing Evidence*, 29 Rutgers L. Rev. 1084 (1976). The majority, in their opinion, primarily rely on *Tarasoff* v. *Regents of the University of California*, 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), and its progeny. *Jablonski* v. *United States*, 712 F.2d 391 (9th Cir. 1983); *Brady* v. *Hopper*, 570 F. Supp. 1333 (D. Colo. 1983), *aff'd*, 751 F.2d 329 (10th Cir. 1984); *Hedlund* v. *Superior Court of Orange County*, 34 Cal. 3d 695, 669 P.2d 41, 194 Cal. Rptr. 805 (1983); *Myers* v. *Quesenberry*, 144 Cal. App. 3d 888, 193 Cal. Rptr. 733 (1983); *Davis* v. *Lhim*, 124 Mich. App. 291, 335 N.W.2d 481 (1983), *remanded*, 422 Mich. 875, 366 N.W.2d 7 (1985). In *Petersen* v. *State*, 100 Wash. 2d 421, 428, 671 P.2d 230, 237 (1983), it was determined that there was a duty to warn because of a mental health counselor's special relationship, where the counselor believed, or should have believed, in the exercise of professional competence, that the patient would carry out a threat of serious violence to a specific person. This is a new departure in the law. In *Tarasoff*, the case was decided on the pleadings, on a motion to dismiss; the issue of foreseeability was not before the court since the pleadings therein alleged that the therapist did, in fact, predict that the patient would kill the plaintiff's daughter;

the court held there could be a duty to warn. Here the evidence discloses that there is no such actual knowledge on the part of the therapist, but, to the contrary, the counselor in good faith did not believe there was any threat to person or property by the patient, and so no duty arises. *Sealey* v. *Finkelstein,* 206 N.Y.S.2d 512 (Sup. Ct. 1960).

The issues here present an important social problem. If the common law requirements of the duty to warn, the foreseeability of harm, and ability to control are not warranted or necessary, that is for the legislature to decide. Likewise, the express statutory prohibition to disclose confidential patient information, if that is not warranted or necessary, again, it is for the legislature to decide. Otherwise we will be engaging in flagrant judicial legislation, which must be, and should be, left to the legislative branch of government. *F.W. Woolworth Co.* v. *Commissioner of Taxes,* 133 Vt. 93, 99, 328 A.2d 402, 406 (1974); *State* v. *Ball,* 123 Vt. 26, 31, 179 A.2d 466, 469-70 (1962). Here, there is no duty to warn, and under the present state of the law in Vermont, the lower court's order dismissing the complaint is without error.

I am authorized to state Mr. Justice Peck joins in this dissent.