**Hubert L. Smith v. Kenneth R. Day and Norwich University**

**John R. Luman v. Kenneth R. Day and Norwich University**

[538 A.2d 157]

Nos. 86-385 and 86-386

Present: **Peck, Gibson, Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed November 20, 1987

*Parker, Lamb & Ankuda, P.C.*, Springfield, and *Freeley and Freeley*, and *Malone and Naumes*, Boston, Massachusetts, for Plaintiffs-Appellants.

596

*Ritchie E. Berger* and *Edward D. Sutton* of *Dinse, Erdmann & Clapp*, Burlington, for Defendant-Appellee Norwich University.

**Gibson, J.** These cases come before this Court on appeals by plaintiffs from the trial court's granting of summary judgments in favor of defendant Norwich University. We affirm.

Plaintiffs are engineers for the Central Vermont Railway. They were wounded in separate shooting incidents on December 17, 1981, and on March 10, 1982. Defendant Kenneth Day, a student at Norwich University, was apprehended by the police shortly after the second shooting incident. Day pled guilty to one count of aggravated assault and was incarcerated for a period of one year.

On December 11, 1984, plaintiffs filed civil actions against both Day and Norwich University, seeking damages for injuries suffered as a consequence of the shooting incidents. On June 11, 1986, the Washington Superior Court entered judgment in favor of defendant Norwich University on its motions for summary judgment, finding that (1) Norwich University owed no duty of care to plaintiffs, (2) even if such a duty did exist, the breach of the alleged duty was not the proximate cause of plaintiffs' injuries, and (3) the doctrine of strict liability was inapplicable to the circumstances of the case.

Plaintiffs appealed, alleging error by the trial court in granting the summary judgment motions while genuine issues of material fact existed, and that the court erred as a matter of law in finding that Norwich University owed no duty to plaintiffs. At oral argument, plaintiffs abandoned their claim of strict liability. Since we find, as a matter of law, that Norwich University owed no duty of care to plaintiffs, we need not reach plaintiffs' other contention.

■ In order to succeed on a motion for summary judgment, the moving party must satisfy a two-part test: first, no genuine issue of material fact must exist between the parties, and second, there must be a valid legal theory which entitles the moving party to judgment as a matter of law. V.R.C.P. 56(c); *Gore* v. *Green Mountain Lakes, Inc.*, 140 Vt. 262, 264, 438 A.2d 373, 374 (1981). The moving party has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine factual issue exists. *Cavanaugh* v. *Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985). The moving party also bears this burden on appeal. *Sykas* v. *Kearns*, 135 Vt. 610, 612, 383 A.2d 621, 623 (1978).

When a defendant moves for summary judgment, he satisfies his legal burden by presenting " 'at least one legally sufficient defense that would bar plaintiff's claim.' " *Gore*, 140 Vt. at 266, 438 A.2d at 375 (quoting 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2734, at 647 (1973)).

The first prerequisite in any negligence proceeding must be to establish the existence of a legally cognizable duty.[1] "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." W. Prosser & W. Keeton, The Law of Torts § 53, at 356 (5th ed. 1984). A legal duty may arise in a broad range of situations. See, e.g., Duty to Aid the Endangered Act, 12 V.S.A. § 519(a) ("A person who knows that another is exposed to grave physical harm shall . . . give reasonable assistance to the exposed person . . . ."). Plaintiffs' claims against Norwich University rely on the unrecognized theory that a duty of care extends from a university to third persons harmed by the criminal acts of its students.

This Court recently examined the question of an institution's "duty" to control the actions of others. In *Peck* v. *Counseling Service of Addison County, Inc.*, 146 Vt. 61, 499 A.2d 422 (1985), we stated that:

> Generally, there is no duty to control the conduct of another in order to protect a third person from harm. Restatement (Second) of Torts § 315 (1965). A recognized exception to this general rule arises in the situation "where there is . . . a special relationship between two persons which gives the one a definite control over the actions of the other . . . ." Harper & Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 895 (1934).

*Id.* at 64-65, 499 A.2d at 425. See generally *Developments in Vermont Law, Standard of Care, Duty, and Causation in Failure to Warn Actions Against Mental Health Professionals*, 11 Vt. L. Rev. 343 (1986).

Plaintiffs argue that a special relationship existed in this case, because of the degree of control exerted by Norwich University

---

[1] It remains indisputable that "[a]bsent a duty of care, an action for negligence must fail." *Behn* v. *Northeast Appraisal Co.*, 145 Vt. 101, 106, 483 A.2d 604, 607 (1984).

over its students' activities. Plaintiffs particularly stress the importance of the fact that Norwich University has numerous rules and regulations which prohibit the illegal conduct engaged in by Cadet Day. Plaintiffs allege that it was the breakdown in the enforcement of these rules and regulations which proximately caused plaintiffs' injuries. Finally, plaintiffs argue that the degree of control exerted by Norwich University over its students through its stringent rules and regulations resulted in the creation of a duty running from Norwich University to plaintiffs. We disagree.

■ The fact that Norwich University may exercise a large degree of control over the activities of its students does not, of itself, impose a legal duty upon the university to control the volitional criminal acts of its students.[2] See *Heller* v. *Consolidated Rail Corp.*, 576 F. Supp. 6, 13 (E.D. Pa. 1982), *aff'd*, 720 F.2d 662 (3d Cir. 1983) (university owes no special duty to its students to protect them from the volitional acts of other students). Nor does a duty arise due to the existence of the stringent rules and regulations governing student life at Norwich University.[3] The fact remains that Cadet Day's actions were volitional criminal acts for which Norwich University had absolutely no reasonably foreseeable notice. See *Peck*, 146 Vt. at 67, 499 A.2d at 426 ("duty [exists] to take whatever steps are reasonably necessary to protect the foreseeable victim of that danger.").

---

[2] The fact that Norwich University is a military college, and not the typical liberal arts university, is of no materiality. Our refusal to extend the duty of care in this instance would be equally applicable to any institution of higher learning. The students attending these institutions are usually of age and must be treated as adults with the full range of rights and responsibilities for their actions as any other adult. See *American Future Systems, Inc.* v. *Pennsylvania State University*, 553 F. Supp. 1268, 1282 (M.D. Pa. 1983) (principle of in loco parentis does not apply to college students). See generally *Bradshaw* v. *Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979 ("[T]he modern American college is not an insurer of the safety of its students."), *cert. denied*, 446 U.S. 909 (1980).

[3] While the effect of rules and regulations governing student life at Norwich University is a genuine factual issue which would be improper to dispose of on a summary judgment motion, these rules and regulations fail to give rise to a legal duty, no matter how much "control" may be exerted therein by Norwich University. See *Langle* v. *Kurkul*, 146 Vt. 513, 519, 510 A.2d 1301, 1305 (1986) (existence of a legal duty is primarily a question of law). The nonexistence of a legal duty in the instant case has been satisfied by examining the evidence in a light most favorable to plaintiffs.

Plaintiffs would have us create a new common law duty of care where none has previously existed. We have recently stated that "[o]ur Court should not recognize a new cause of action or enlarge an existing one without first determining whether there is a compelling public policy reason for the change." *Langle* v. *Kurkul*, 146 Vt. 513, 519, 510 A.2d 1301, 1305-06 (1986). In the instant case, compelling public policy reasons exist against extending the common law understanding of duty. First, most college students, including defendant Day, are adults and must take full responsibility for their actions. See generally *American Future Systems, Inc.* v. *Pennsylvania State University*, 553 F. Supp. 1268, 1282 (M.D. Pa. 1983) (principle of in loco parentis does not apply to college students).[4] Second, it is unrealistic to expect the modern American college to control all of the actions of its students. See generally *Bradshaw* v. *Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979), *cert. denied*, 446 U.S. 909 (1980) (college is not an insurer for its students). Third, making a university liable for this type of action would inevitably lead to repressive regulations and a loss of student freedoms, thus contravening a goal of higher education: "the maturation of the students." *Baldwin* v. *Zoradi*, 123 Cal. App. 3d 275, 291, 176 Cal. Rptr. 809, 818 (1981). Finally, if universities could be held liable for what their students learned or experienced at college, this would infringe upon the long-established "right" of academic freedom as universities attempted to control what was taught to their students as well as all their actions in an effort to avoid potential liability. See generally *Sweezy* v. *New Hampshire*, 354 U.S. 234, 261-63 (1957) (Frankfurter, J., concurring) (unfettered intellectual pursuit of knowledge a necessary academic freedom).[5] To undertake such an expansion of the common law duty of care as requested by plaintiffs in the face of compelling public policy reasons against doing so would be contrary to established judicial precedent and logic itself.

---

[4] While we recognize that the university does not stand in loco parentis to its students, the following analogy may be applicable. It is "suggested that a parent may be liable for his failure so to rear and train his child as to make it amenable to discipline. Parents might properly be horrified at the thought of being held legally responsible for the efficacy of their disciplinary measures." Harper & Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 895 (1934).

[5] By way of example, we would not want universities to stop teaching computer science for fear that one of their students might use this knowledge for fraudulent electronic bank transfers.

*Affirmed.*