**MS. B.**

**v.**

**MONTGOMERY COUNTY EMERGENCY SERVICE, INC., et al.**

**Civ. No. 89–0124.**

United States District Court, E.D. Pennsylvania.

July 17, 1992.

Sterling E. Flowers, Law Office of Sterling E. Flowers, Philadelphia, Pa., for plaintiffs Ms. B. and Nancy Pendleton.

Richard Mentzinger, Jr., Office of U.S. Atty., Philadelphia, Pa., for defendant U.S. Postal Service.

Jonathan B. Sprague, Post & Schell, P.C., Philadelphia, Pa., for Montgomery County Emergency Service and related individual defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

In this action, plaintiff asserts a claim under 42 U.S.C. § 1983 against defendant Montgomery County Emergency Service, an institution at which she received psychiatric treatment, and against individual defendants who participated in her treatment there. The basis of plaintiff's section 1983 claim is defendants' disclosure to law enforcement personnel and to plaintiff's supervisor of threats made by plaintiff during the course of her treatment. Plaintiff alleges that this disclosure was in violation of section 111 of the Pennsylvania Mental Health Procedures Act, 50 P.S. §§ 7101 et seq., which protects the confidentiality of a mental patient's treatment records. Defendants have now moved for summary judgment.

### I.  Facts

To succeed on a motion for summary judgment, a moving party must establish that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party is initially responsible for identifying those portions of the factual record which it believes establish that there are no issues of material fact. Once the moving party has done so, the opposing party must demonstrate, by reference to affidavits, depositions, answers to interrogatories, or admissions, that a triable issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In the present case, defendants have submitted a number of affidavits, as well as admissions by both sets of parties, in order to establish that no material issue of fact exists. Plaintiff, in response, has filed no affidavits, depositions, or other evidence. Accordingly, the following are the undisputed facts for the purposes of this motion for summary judgment.

Plaintiff is a former postal worker who was employed at the United States Post Office in Devon, Pennsylvania. On January 5, 1987, plaintiff's then attorney telephoned an acquaintance who was an employee of defendant Montgomery County Emergency Services (MCES), and told his acquaintance that, in his opinion, plaintiff needed psychiatric treatment. As a result of this conversation, plaintiff was brought to MCES on January 6. There, she was examined by defendant K. Ashalatha Reddy, M.D., a psychiatrist then employed by MCES. During the course of Dr. Reddy's evaluation, plaintiff informed Dr. Reddy that she was preoccupied with thoughts of killing her supervisor, Jeffrey Moran, and two co-employees. She further stated that she owned a 9mm Uzi semi-automatic pistol, that she had previously stalked her supervisor and the two co-employees, that she knew where they lived, and that if she returned to work she would shoot them.

Plaintiff declined to admit herself voluntarily for treatment at MCES. As a result, after her evaluation of plaintiff, Dr. Reddy executed an application for involuntary emergency examination and treatment under section 302 of the Pennsylvania Mental Health Procedures Act (MHPA), 50 P.S. § 7302 (Purdon's Supp.1991). Section 302 authorizes holding plaintiff for involuntary treatment for 120 hours pending an application for extended involuntary emergency treatment.

On January 7, plaintiff repeated her explicit threats to kill her co-workers during the course of an interview with Louis Pratt, an MCES counselor and social worker. Plaintiff also met with Rocio Nell, M.D., her treating psychiatrist at MCES, and expressed her strong anger at her co-

workers, of the manner in which she perceived they had wronged her, and of her desire for revenge. Dr. Nell thereafter completed an application to retain plaintiff for extended involuntary treatment pursuant to section 303 of the MHPA, 50 P.S. § 7303. On January 9, after a hearing, the Mental Health Review Officer denied the application for extended involuntary treatment.

At the conclusion of the hearing, Dr. Nell met with another doctor, MCES's counsel, and defendant Robert Bond, the MCES criminal justice liaison. The four agreed that plaintiff's threats were serious and that the intended victims and law enforcement authorities should be warned of plaintiff's threats and imminent discharge. Mr. Bond then telephoned plaintiff's supervisor, Mr. Moran, and representatives of the Federal Bureau of Investigations, the Tredyffrin Township Police Department, and the Norristown Police Department. Mr. Bond informed these individuals of plaintiff's identity, of the nature of her threats, and of the fact that she was about to be released from MCES. Mr. Bond said nothing of the nature of plaintiff's mental illness or of any communications she had made during the course of her treatment, other than the explicit threats against three individuals.

Prior to release, plaintiff met once more with Dr. Nell. At the meeting, plaintiff once again voiced her threats. Dr. Nell told plaintiff that the threats would be disclosed to the threatened individuals and to appropriate law enforcement agencies; plaintiff replied that such disclosure would not bother her. Plaintiff was then released.

On January 10, officers of the Tredyffrin Township Police Department arrested plaintiff. She was subsequently convicted of making terroristic threats in violation of 18 Pa.C.S.A. § 2706.

## II. Legal Analysis

To prevail on a section 1983 claim, a plaintiff must demonstrate (1) conduct by a person acting under color of state law that (2) deprived the plaintiff of rights, privileges, or immunities secured by the Consti-

tution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir.1990). Defendants concede, for the purposes of this motion, that they acted under color of state law. The sole issue before the court, therefore, is whether defendants' actions deprived plaintiff of any rights, privileges, or immunities secured by the Constitution or laws of the United States.

Plaintiff's complaint originally alleged deprivations of procedural due process and substantive due process. On May 20, 1990, however, on defendants' motion to dismiss, I dismissed plaintiff's procedural due process claim, allowing only the substantive due process claim to go forward.

■ Unlike the requirement of procedural due process, which merely requires the state to erect adequate procedural safeguards before effecting a deprivation of liberty or property, the requirement of substantive due process places affirmative limits on what a state may do. *See Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). Substantive due process is offended when a government actor impinges upon a constitutionally protected fundamental right in a manner that is "so arbitrary and unreasonable as to 'shock the conscience of the court.'" *Fanning v. Montgomery County Children and Youth Servs.*, 702 F.Supp. 1184, 1190 (E.D.Pa. 1988) (quoting *In re Scott County Master Docket*, 672 F.Supp. 1152, 1166 (D.Minn. 1987)); *see also Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 683 (3d Cir.1991) (stating that "a plaintiff may maintain a claim of substantive due process violations upon allegations that the government deliberately and arbitrarily abused its power"), *cert. denied*, —— U.S. ——, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).

■ Plaintiff apparently regards as a violation of her substantive right to due process the disclosure of confidential information in violation of section 111 of the

MHPA. That section provides, in relevant part:

All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to section 110;

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent....

50 P.S. § 7111 (Purdon's Supp.1991). It is not immediately apparent that defendants' conduct did violate the statute. As defendants note, the MHPA's implementing regulations provide for nonconsensual release of confidential information "[i]n response to an emergency medical situation when release of information is necessary to prevent serious risk of bodily harm or death." 55 Pa.Code § 5100.32(9). While the statute does not define the phrase "emergency medical situation," it does not purport to restrict disclosure to situations where the patient herself is at serious risk of bodily harm or death; it may plausibly be read to encompass situations in which the threat is to a third party.

■ Even if defendants' conduct violated the MHPA, however, such a violation of a state statute is not sufficient, standing alone, to establish a violation of a constitutional right. *See Scheetz v. The Morning Call, Inc.,* 946 F.2d 202, 207 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1171, 117 L.Ed.2d 417 (1992); *Pesce v. J. Sterling Morton High School Dist. 201,* 830 F.2d 789, 797 (7th Cir.1987). It is thus necessary to explore the extent to which defendants' actions implicate plaintiff's constitu-

tional right to liberty or property, the rights that are protected by the due process clause of the Fourteenth Amendment.

■ The Fourteenth Amendment's concept of personal liberty includes protection of limited zones of privacy.[1] *See Whalen v. Roe,* 429 U.S. 589, 598–99 n. 23, 97 S.Ct. 869, 875–76 n. 23, 51 L.Ed.2d 64 (1977); *Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973); *Borucki v. Ryan,* 827 F.2d 836, 839 (1st Cir.1987). The protection of privacy extends to two types of interests: "the individual interest in avoiding disclosure of personal matters" and "the interest in independence in making certain kinds of important decisions." *Whalen,* 429 U.S. at 599–600, 97 S.Ct. at 876. The Third Circuit has long held that medical records are protected from disclosure by the first of these interests, the confidentiality branch of the right to privacy. *See Scheetz,* 946 F.2d at 206; *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577–78 (3d Cir.1980); *cf. Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 812 F.2d 105, 112–13 (3d Cir.1987) (police application seeking medical information implicates right to privacy). It is therefore clear that plaintiff's constitutional rights are implicated in defendants' disclosure of threats that plaintiff made during the course of her treatment.

The fact that plaintiff's constitutional rights are implicated does not conclude the inquiry, however, because constitutional protection of the confidentiality of medical records is far from absolute. Rather, the court must engage in a balancing of interests, weighing the individual's interest in nondisclosure against the state interests that are furthered by the disclosure. *See Fraternal Order of Police,* 812 F.2d at 110–11; *Westinghouse,* 638 F.2d at 578. In describing the balancing test, the *Westinghouse* court stated:

The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information

---

1. Defendants concede, for the purposes of this motion, that plaintiff's interest in the confiden-

tiality of her medical records falls within her constitutional right to liberty.

it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Westinghouse,* 638 F.2d at 578.

In the present case, the type of record involved and the information contained therein are deserving of a high degree of protection. In the process of undergoing psychiatric treatment, a patient is expected to lay bare his inner self, to reveal thoughts and feelings that are highly personal and that are often painful and embarrassing to confront. *See O'Donnell v. United States,* 891 F.2d 1079, 1086 (3d Cir.1989); *In re B,* 482 Pa. 471, 394 A.2d 419, 426 (1978). Indeed, the success of psychiatric treatment depends on the patient's ability and willingness to reveal his innermost thoughts, desires, and fears. A patient cannot and should not be expected to submit to such a process without strong assurances that what he says in the course of treatment will be kept confidential. *See In re B,* 394 A.2d at 426.

Breaches of confidentiality create several types of harm. First, the breach may produce direct negative consequences for the patient. Such was the case here, as plaintiff, as a result of defendants' communication, was arrested and ultimately convicted of making terroristic threats. Second, the patient may suffer harm simply from knowing that elements of the intimate details of his life have been laid bare for the uninvited viewer. Third, the patient may suffer harm to his public image that, if the public disclosures are true, cannot be rehabilitated through legal action. *See O'Donnell,* 891 F.2d at 1086. Finally, the patient-doctor relationship, founded as it is on trust, may be irredeemably shattered.

It is evident that only a strong state interest could outweigh plaintiff's interest in maintaining the confidentiality of her psychiatric records. It is likewise evident, however, that the state interest in protecting citizens from violent assault is a sufficiently strong state interest. The state's obligation to protect the safety of members of the public from the mentally ill has been recognized both judicially and statutorily. *See In re J.S.,* 526 Pa. 418, 586 A.2d 909, 913 (1991); 50 P.S. § 7102. Indeed, several states have explicitly stated that a treating psychiatrist has a duty to take reasonable steps to avert harm to third persons that she believes is reasonably foreseeable in light of threats made by her patient. In the seminal case of *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), a psychiatric patient had made explicit threats against a specific individual in the course of psychiatric treatment, and thereafter killed her. The victim's parents filed suit against the patient's psychologist, alleging that the psychologist had a duty to warn them of the threats that had been made against their daughter. In allowing plaintiffs to amend their complaints to allege failure to warn the victim herself, the California Supreme Court located a duty to protect third persons from harm:

> When a therapist determines, or pursuant to the standards of the profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.

*Id.,* 17 Cal.3d at 431, 131 Cal.Rptr. at 20, 551 P.2d at 340. The court reached this conclusion despite its recognition of a strong public interest in the confidentiality of communications between a patient and a mental health professional:

> Our current crowded and computerized society compels the interdependence of

its members. In this risk-infested society we can hardly tolerate the further exposure to danger that would result from a concealed knowledge of the therapist that his patient was lethal. If the exercise of reasonable care to protect the threatened victim requires the therapist to warn the endangered party or those who can reasonably be expected to notify him, we see no sufficient societal interest that would protect and justify concealment. The containment of such risks lies in the public interest.

*Id.*, 17 Cal.3d at 442, 131 Cal.Rptr. at 27–28, 551 P.2d at 347–48.

Most jurisdictions that have considered the issue have concurred with the *Tarasoff* court in finding that a mental health professional has a duty to take reasonable steps to avert harm to others threatened by her patient. *See, e.g., Hamman v. County of Maricopa*, 161 Ariz. 58, 64, 775 P.2d 1122, 1128 (1989); *Davis v. Lhim*, 124 Mich.App. 291, 335 N.W.2d 481, 486–89 (1983); *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500, 512 (1979); *Peck v. Counseling Serv.*, 146 Vt. 61, 499 A.2d 422, 426 (1985) (plurality); *Schuster v. Altenberg*, 144 Wis.2d 223, 424 N.W.2d 159, 171 (1988). The duty imposed by these courts is in general accord with the limits on patient-therapist confidentiality recognized by the American Medical Association:

> The obligation to safeguard patient confidences is subject to certain exceptions which are ethically and legally justified because of overriding social considerations. Where a patient threatens to inflict serious bodily harm to another person and there is a reasonable probability that the patient may carry out the threat, the physician should take reasonable precautions for the protection of the intended victim, including notification of law enforcement authorities.

*American Medical Association Principles of Medical Ethics* ¶ 5.95, *reprinted in* Council on Ethical and Judicial Affairs of the American Medical Association, *Current Opinions*, at 21 (1989).

The Pennsylvania courts have neither adopted nor rejected the reasoning of *Tarasoff* and its progeny. *See Dunkle v. Food Serv. East, Inc.*, 400 Pa.Super. 58, 582 A.2d 1342, 1346 (1990). In *Dunkle*, the Pennsylvania Superior Court suggested that, if it were to recognize *Tarasoff*, it would interpret that decision narrowly because of the strong concern in Pennsylvania for confidentiality of patient-therapist communications, as expressed, *inter alia*, in the MHPA. *See id.* 582 A.2d at 1347. The court did not suggest, however, that the Mental Health Procedures Act stood as an absolute bar to disclosure by a therapist of her patient's threats of violence.[2] Further, even if the Pennsylvania courts were to determine that the Mental Health Procedures Act did establish a privacy interest under Pennsylvania law that was sufficiently strong to bar defendants from disclosure in the present circumstances, such a conclusion would not necessarily establish a violation of plaintiff's federal constitutional rights. Plaintiff's constitutionally-protected right to privacy is not necessarily coextensive with her privacy rights under state law.

Defendants in the present case found themselves in an extraordinarily delicate position. On the one hand, they were bound by their ethical and statutory duty to maintain the confidentiality of plaintiff's communications to them. On the other hand, they were aware, based on plaintiff's repeated threats, of a grave danger to the individuals who were the targets of plaintiff's threats. Once they decided to act, defendants limited their disclosure only to the fact that plaintiff had made the threats and apparently had the means to carry them out, and communicated the threats only to law enforcement personnel and one of the individuals threatened. Given the extensive judicial recognition of a common-law duty to warn and the limits placed on the ethical duty of confidentiality by the

---

**2.** The patient in *Dunkle* had exhibited violent tendencies during the course of his psychological treatment; he had done nothing, however, to suggest that he presented a particular danger to his eventual victim. Under these circumstances, the court concluded, the psychologist did not have a duty to warn the eventual victim. *See Dunkle*, 582 A.2d at 1344–45.

American Medical Association, I cannot conclude that defendants' acts improperly infringed on plaintiff's Fourteenth Amendment right to privacy.

It may be that defendants' conduct violated the Pennsylvania Mental Health Procedures Act, and plaintiff may have a remedy under that law. Plaintiff does not seek such a remedy here, however; rather, she seeks to recover for alleged injury to her constitutional rights. On the undisputed facts before the court on defendants' motion for summary judgment, I have concluded that no such injury exists. Accordingly, defendants' motion for summary judgment will be granted.