## Donald J. Daniels v. George N. Parker, et als

(126 A2d 85)

Special Term at Rutland, November 1955.

Present: **Jeffords, C. J., Cleary, Adams, Chase and Hulburd, JJ.**

Opinion Filed October 2, 1956.

*Clayton H. Kinney, Lawrence & O'Brien* and *Ryan, Smith & Carbine* for the defendants.

*Silvio T. Valente* and *Frederic J. Delaney, Jr.,* for the plaintiff.

**Hulburd, J.** The defendant Vermont Marble Company's demurrer to the plaintiff's complaint raises the single question: can a plaintiff join the employer and the employee as parties-defendant in an action of tort where the employer's liability for the alleged negligent act of the employee is based solely on the doctrine of *respondeat superior*?

The plaintiff declares that he was a pedestrian lawfully using the public highway and that while so doing he was injured in a motor vehicle accident involving two automobiles, one of which, he says, was being negligently operated by the defendant George N. Parker, who was then and there engaged in the business of the defendant, Vermont Marble Company, and acting as its servant or agent. To this complaint the defendant, Vermont Marble Company, demurred on the ground that "under the laws of Vermont, the plaintiff cannot maintain his aforesaid action against both the master and the servant, but rather must bring a severable action, it being maintained a joint ac-

tion such as this does not lie against both the master and the servant."

The trial court overruled the defendant's demurrer and the case is here on exceptions to the court's action.

The defendant, Vermont Marble Company, points out that there is no allegation that it authorized, ratified, or participated in the negligent acts of defendant Parker; that clearly the plaintiff's action is predicated on the doctrine of *respondeat superior*. This being so, the defendant-employer contends that the plaintiff may not maintain an action against both the employer and employee; he may sue one or the other, the defendant argues, but not both in the same action. In support of its position, the defendant cites a line of cases headed by *Raymond* v. *Capobianco*, 107 Vt 295, (1935), 178 A 896, 98 ALR 1051, and followed by *Eisler* v. *Wilder*, 108 Vt 37, 182 A 204; *Jones* v. *Valisi*, 111 Vt 481, 18 A2d 179; *Sears* v. *Laberge*, 116 Vt 168, 71 A2d 687; and *Gould* v. *Towslee*, 117 Vt 452, 94 A2d 416. The defendant points out that in the Capobianco case, *supra*, at page 303 this Court said: "We think the rule that in such cases, the master and servant are not joint tort-feasors and are only severally liable to an injured person, is based on sounder reasoning than the rule that they are joint tort-feasors, and therefore, jointly and severally liable, and we adopt that rule". Then again in *Eisler* v. *Wilder*, 108 Vt 37, 38, 182 A 204, this Court used the following language at page 38: "In the recent case of *Raymond* v. *Capobianco*, 107 Vt 295, 178 A 896, this Court held that in tort actions where the wrongful act was committed by the servant alone, and the master did not participate in it or adopt it, the master is liable only under the doctrine of *respondeat superior*; that under such circumstances the liability of the master and the servant is several and not joint, and that a joint action cannot be maintained against them". The same doctrine is reflected in the three other cases cited, namely, in *Jones* v. *Valisi*, 111 Vt 481, 18 A2d 179; *Sears* v. *Laberge*, 116 Vt 168, 71 A2d 687; and *Gould* v. *Towslee*, 117 Vt 452, 465, 94 A2d 416.

To meet the defendant's seemingly well-justified position, the plaintiff advances two main arguments. First, that the decisions on which the defendant relies are mere dicta, at least,

so far as this case is concerned, and secondly, that the reasoning supporting them is tenuous and unsatisfactory and has been rejected by the vast majority of jurisdictions.

It is, of course, generally recognized that there is a conflict of authority as to whether a master and a servant can be sued jointly in the circumstances under consideration. It is further generally recognized that by the Capobianco case Vermont subscribed to the negative view in this matter and, in so doing, aligned itself with the views of a very restricted minority. See 57 CJS, Master and Servant, §579; 35 Am Jur, Master and Servant, §592; Mechen Agency, §2011. Although we have an early dictum to the contrary in *Brown* v. *Lent*, 20 Vt 529, 532, our position in all our recent cases has consistently indicated an adherence to the doctrine spelled out in the Capobianco case, even though such doctrine may not have been necessary to its decision.

Without doubt the question is now presented to us more squarely than in any former case. Thus confronted, we think we should take advantage of the opportunity which has arisen and review our position, and consider how well taken our stand was when *Raymond* v. *Capobianco*, 107 Vt 295, 178 A 896, 98 ALR 1051, was decided; for it was with that case that we first announced the rule which in subsequent cases has come to be regarded as an established doctrine in this State. Inasmuch as all our later cases on the subject owe their provenience to the Capobianco case, an examination of the reasoning underlying it would seem to be called for. The situation in that case was as follows: the plaintiff sued one Costa, and obtained a judgment which remained unsatisfied; thereafter the plaintiff brought a second suit against Costa's employer under the rule of *respondeat superior*. The defendant's third plea alleged the fact of the former trial, verdict, and judgment, and that the cause of action was concerned with the identical accident first sued on and based solely on the doctrine of *respondeat superior*, whereby the defendant alleged that the plaintiff was barred from maintaining his second action because he exercised an election in the bringing of the first suit against Costa. On demurrer by the plaintiff, the plea was held good by the lower court. This ruling was affirmed by this Court on the ground that when

the plaintiff elected to sue the servant, Costa, the judgment in the suit against Costa barred the plaintiff from maintaining the second suit against the master.

It must be confessed that the decision of the Capobianco case was not well received if the law reviews furnish any criterion. Nor has its experience been any better at the hands of those courts that subsequently have had the same question to pass upon. None of them appears to have followed it. Its reasoning made no converts. Its logic, if comprehensible, failed to commend itself to others. As was said in 45 Yale Law Journal, 920 "the precise grounds for the decision are somewhat obscure."

Apparently the Court proceeded from the premise assumed at page 298 where it says "No claim is made by the plaintiff that this action can be maintained against the defendant on any ground other than that the defendant and his servant were joint tort feasors and therefore jointly and severally liable." With this introduction the Court proceeds to discuss the question of whether the master and servant may be sued jointly where the doctrine of *respondeat superior* is involved. The Court concluded that the vicarious liability of the master is only a substituted or alternative one which cannot exist concurrently with that of the servant, and by so doing according to the reviewer in the Yale Law Journal, supra, "The necessity of an election is thereby read into the doctrine of *respondeat superior* itself."

In dealing with the problem, our Court recognized that the authorities were in conflict. Having cited some of them which were contrary to the course ultimately adopted, it came to the case of *Parsons* v. *Winchell* (1850) 5 Cush, Mass, 592. This it cited as a leading case; "Where it was held that a master and a servant were not liable jointly in an action on the case for an injury caused by the negligence of the servant while driving the horses and carriage of the master in his absence." When the Court turned to *Parsons* v. *Winchell, supra,* it turned backward to a case based on the outmoded "forms of action". In so doing it adopted a fallacious approach to the problem which could lead only to a dead end. In the older procedure, the remedy against the master who did not command or participate in the wrong, but who, in the event of his servant's negli-

gence, had the fault imputed to him, would be an action in case, while the action against the servant would be trespass, and these actions could not be joined. See Note in 98 ALR 1058. The Court apparently failed to take into account the effect of the abolition of common law forms of action by our Practice Act. Under it, whether a master and his servant were joint tort feasors in a technical sense was no longer meaningful and should not have been of controlling importance. As an authority *Parsons* v. *Winchell* was obsolescent.

Even at the time it was decided, this Massachusetts case is said not to have been supportable by reason or authority. See note in 21 Illinois Law Review (1927) 522, 523. We do not pursue this question further, however, since no matter how well decided *Parsons* v. *Winchell* may have been originally, the advent of the Practice Act made it vacuous as an authority in 1935, the date of the Capobianco case.

The other cases cited by the Court in support of its position were largely decisions which had derived from *Parsons* v. *Winchell, supra,* in other jurisdictions. It will serve no good purpose to deal with them individually. Perhaps we can do no better than again quote from the Yale Law Review, Vol. 45 at page 924, footnote 27: "It is interesting to note that among the cases cited in support by the Vermont Court, three were dicta, two have apparently been overruled and one [*Williams* v. *Ferrell*, (1895) 10 Tex. Civ. App. 231, 235, 30 SW 450, 451] reached the opposite conclusion in a dictum."

In this connection it is to be noted that the Court, in enumerating authorities *pro* and *con*, strangely enough, made no mention of the case of *Putnam Memorial Hospital* v. *Allen*, (1929) 34 F2d 927 which had been decided only five or six years before the Capobianco case and was directly in point on the doctrine announced. We quote from Judge Swan's opinion beginning at page 929: "The motion of the defendants that the plaintiff be required to elect between them was based upon the theory that master and servant may not be sued jointly in an action of tort founded on the negligence of the servant, where the master's responsibliity results solely from the doctrine of *respondeat superior* and without his personal participation in the servant's tort. Upon this subject there is a split in the authorities, a

minority of the jurisdictions holding as the defendants contend. See 39 CJ 1314; *Parsons* v. *Winchell,* 5 Cush., Mass, 592, 52 Am Dec 745; *French* v. *Construction Co.,* 76 Ohio St. 509, 81 NE 751, annotated 12 LRANS 670; *Warax* v. *Cincinnati etc. Ry. Co.,* C. C. Ky, 72 F. 637. The reasons advanced for such holdings are not convincing. The early cases stress the distinctions between actions in trespass and actions on the case (see *Hewett* v. *Swift,* 3 Allen, Mass, 420, 424) distinctions which are of little importance in modern pleading. The argument that the master will lose his right of indemnity has no compelling force in states which permit the joinder. See *Southern Ry. Co.* v. *Carson,* 194 US 136, 139, 34 S Ct 609, 48 L Ed 907. We prefer the view of the majority if we are free to choose in this question of joinder, depending, as it must, upon local law. *Chicago R. I. & Pac. Ry.* v. *Schwyhart,* 227 US 184, 33 S Ct 250, 57 L Ed 473. The only expression on the subject in the Vermont decisions is an early dictum in favor of the right. *Brown* v. *Lent,* 20 Vt 529, 531. * * * The better reason, as well as the trend of modern authority, seems to us to favor the right of joinder.''

It is perhaps not without significance that the doctrine of *Parsons* v. *Winchell* has been done away with by statute in Massachusetts. (See General Laws, C. 231, §4a as amended by St. 1947, C. 408, §1). Thus it would appear that, in its practical operation, the rule proved unsatisfactory in the state where its impetus for the most part originated. See *Kabatchnick* v. *Hanover-Elm Bldg. Corp.,* 331 Mass 366, 119 NE2d 169, wherein the court said: "It changes the former rule and now permits the joining of the principal and agent in a single action even where the principal or master did not participate in the wrongful act of the agent or servant." This leaves the number of jurisdictions clinging to the old rule of *Parsons* v. *Winchell, supra,* a small company indeed. See 57 CJS at pages 350-351 for foot notes setting forth how the various jurisdictions hold.

When one asks the broad, ultimate question, what does the old rule contribute to the administration of justice which justifies its retention, no good reason is apparent. On the other hand, its disadvantages have been pointed out in every quarter. Aside from, - and in addition to, - the matter of saving time and expense, common sense and common justice would seem to permit

but one answer. As was pointed out in 36 Columbia Law Review (1936) 324, 326, "One may question the expediency of a rule which makes just compensation dependent upon the often blind guess of the plaintiff's attorney as to the financial responsibility of the defendants and their susceptibility to service." To these two hazards might be added a third, namely, possible evidentiary difficulties such as thwarted the plaintiff in *Jones* v. *Valisi*, 111 Vt 481, 18 A2d 179.

Again, as is pointed out in 45 Yale Law Journal (1936) 920, 921, "The servant is liable for his own negligence at all times, irrespective of whether his agency position is recognized or not; and the master, as soon as it is established that he is such, is liable without reference to his own fault, because the law has imposed an absolute obligation upon him as a matter of social policy. Accordingly, there is no inherent contradiction in the insistence that both are under an obligation to the plaintiff." So, too, in 26 Minnesota Law Review 739, 743 we find the following: "The policy underlying *respondeat superior* is that of requiring the master, who normally profits by the act of his servant, to stand as surety for damages to innocent third parties caused by the servant in the course of his employment. Clearly this policy points toward coincidental rather than alternative liability. And if it be granted that this is the nature of the relationship between the co-existing liabilities of master and servant it follows that joinder should be permitted and that election of remedies has no application."

When we turn from the law reviews to the recently decided cases we find that the reasoning of *Parsons* v. *Winchell, supra,* has received no more favorable treatment. As most of the major grounds of criticism have already been set forth, we will not attempt further quotations from the decisions. An enumeration, however, of a few of the more important and recent cases may be desirable. These are all contrary to the Capobianco case. They include: *Sherwood* v. *Huber & H. Motors Exp. Co.,* 286 Ky 775, 151 SW2d 1007, 135 ALR 263; *Walters* v. *Anthony,* 252 Ala 244, 40 S2d 316; *Marshall* v. *Chapman's Estate,* 31 Wash 2d 137, 195 P2d 656; *Skala* v. *Lehon,* 343 Ill 602, 175 NE 832, 833; *Shaw* v. *Bernard Co.,* 229 NC 713, 51 SE2d 295; *Employers Cas. Co.* v. *Barnett,* 205 Okla 73, 235 P2d 682.

 In the face of all this, we can not bring ourselves to accord final confirmation to a doctrine which was out-moded at the time of its acceptance and which experience has shown is increasingly ill-adapted to the needs of modern practice. For this reason we hold that a joint action against a master and his servant may be maintained for injuries resulting from the negligence of the servant for which the master is liable under the doctrine of *respondeat superior*. Anything appearing to the contrary in our cases is hereby overruled.

*Order overruling the defendant Marble Company's demurrer to the plaintiff's declaration is affirmed and the cause is remanded.*

Note: When this case was argued at the Special November Term, 1955, it was assigned to Mr. Justice Chase. At the May Term, 1956, it was reassigned to Mr. Justice Hulburd.