2014 VT 52

### Michael R. Buxton v. Springfield Lodge No. 679, Loyal Order of Moose, Inc. and Robert Merrill, Sr.

[99 A.3d 171]

No. 12-398

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed May 23, 2014

488

*John J. Boylan, III* and *John D. Willey, Jr.* of *Boylan Associates, P.C.*, Springfield, for Plaintiff-Appellant.

*Matthew D. Anderson* of *Pratt Vreeland Kennelly Martin & White, Ltd.*, Rutland, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiff appeals two superior court decisions in this personal-injury negligence action: (1) an order dismissing all claims against defendant Robert Merrill, Sr., in his individual capacity, on summary judgment, and (2) an order granting partial judgment as a matter of law during trial, concluding that any liability of defendant Springfield Lodge No. 679, Loyal Order of Moose, Inc., could not be predicated on the action or inaction of Mr. Merrill, Sr., its governor. We affirm both decisions.

¶ 2. We treat each appealed decision separately, beginning with the summary judgment order. We review summary judgment decisions de novo. *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476, 853 A.2d 48. In doing so, we apply the same standard as the trial court. *Id.* We therefore affirm a grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). In reviewing the facts, "we give the nonmoving party" — in this case, plaintiff — "the benefit of all reasonable doubts and inferences." *Doe*, 2004 VT 37, ¶ 9.

¶ 3. At the time of the summary judgment order, the record reflected the following basic sequence of events, viewed in the

light most favorable to plaintiff. Plaintiff, a party guest, was injured during a New Year's Eve party hosted by the Springfield Lodge when a fight broke out between two other party guests. The combatants were Danny Snide and Robert Merrill, Jr., the adult son of defendant Robert Merrill, Sr. Merrill, Sr. and his spouse — Merrill, Jr.'s mother — were both present at the party. At the time, Merrill, Sr. was the governor of the Lodge, the highest position in the Lodge hierarchy. In this position, Merrill, Sr. was an unpaid volunteer.

¶ 4. Merrill, Jr. had a reputation as a "hothead" and a "fighter." He was bickering throughout the night with Snide about arm wrestling, which is forbidden by Lodge policy. Snide's spouse claimed that Merrill, Jr. was challenging Snide to arm wrestle and that she complained about this behavior to Merrill, Sr., who did not take immediate action to stop it.

¶ 5. Eventually, there was a scuffle of some kind in the men's room involving Merrill, Jr. and an unnamed man. Merrill, Jr.'s mother broke it up. Merrill, Sr. arrived and asked another person to keep Merrill, Jr. in the bathroom while Merrill, Sr. went to look for the unnamed man. Merrill, Jr. escaped the bathroom and began fighting Snide. In the resulting commotion, plaintiff was injured.[1]

¶ 6. In addition to alleging these events, plaintiff submitted selected pages from an Orientation Guide for New Officers stating that the duties of the governor of the Lodge include "Chair[ing] the House Committee." The Orientation Guide also states that the house committee "supervises all aspects of the social quarters operation, including: . . . members['] access to, and conduct within the lodge social quarters." The Guide further says:

> Other than the Governor's authority to fine, a member of the House Committee has no authority in the social quarters as an individual. In cases of misconduct committed in his presence, he should exercise authority only if the person in charge is unavailable, and he has been so authorized by the House Committee.[2]

---

[1] Like Merrill, Sr., plaintiff was also a Lodge official, the Lodge administrator. Defendant, Merrill, Sr., claimed that plaintiff had more responsibility for social activities within the Lodge than defendant.

[2] In his briefs, plaintiff relies upon the responsibilities of the house committee, as described in the bylaws of Moose International, as binding on the Lodge. This

¶ 7. ■ To survive summary judgment on a claim involving Merrill, Sr.'s individual liability for negligence in this matter, plaintiff must make a prima facie showing that Merrill, Sr. owed some duty of care to plaintiff. *Rubin v. Town of Poultney,* 168 Vt. 624, 625, 721 A.2d 504, 506 (1998) (mem.) ("Absent a duty of care, an action for negligence fails."). A duty is an " 'obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct towards another.' " *Smith v. Day,* 148 Vt. 595, 597, 538 A.2d 157, 158 (1987) (quoting W. Keeton et al., Prosser and Keeton on the Law of Torts § 53, at 356 (5th ed. 1984)). The existence of a duty "is primarily a question of law." *Endres v. Endres,* 2008 VT 124, ¶ 11, 185 Vt. 63, 968 A.2d 336. The court determines whether a duty is owed, as well as the scope of any duty that is owed. 2 D. Dobbs et al., The Law of Torts § 251, at 2 (2d ed. 2011).

¶ 8. ■ This case turns on whether Merrill, Sr. owed a duty to plaintiff to take some action to prevent the fight that caused plaintiff's injury. In addressing this alleged duty, we note that in general a person does not have an affirmative duty to "protect, aid, or rescue" another. *Id.; Williams v. Cunningham Drug Stores, Inc.,* 418 N.W.2d 381, 383 (Mich. 1988) (stating that "as a general rule, there is no duty that obligates one person to aid or protect another" in common-law tort). Nor, generally, is there a duty " 'to control the conduct of a third person as to prevent him from causing physical harm to another.' " *Sorge v. State,* 171 Vt. 171, 176, 762 A.2d 816, 819 (2000) (quoting Restatement (Second) of Torts § 315 (1965)); accord *Peck v. Counseling Serv. of Addison Cnty., Inc.,* 146 Vt. 61, 64-65, 499 A.2d 422, 425 (1985).

¶ 9. In essence, plaintiff is arguing that an exception to this general rule applies here such that Merrill, Sr. had a duty to plaintiff defined by his responsibilities as governor of the Lodge. We conclude that the most accurate way to evaluate plaintiff's argument is as an assertion that Merrill, Sr. voluntarily assumed the responsibilities assigned to the governor and in doing so undertook "to render services to [the Lodge] which he should recognize as necessary for the protection of a third person."

---

reliance is inappropriate because the bylaws first entered this case as evidence at trial. They were not part of the record on which the trial court made its summary judgment decision. We do not consider them in addressing the validity of the summary judgment ruling.

Restatement (Second) of Torts § 324A. The third person, under this claim, is a member or social guest who is using Lodge facilities. This duty is defined by the responsibilities Merrill, Sr. assumed as governor.

¶ 10. This is a familiar argument. We have decided a number of cases under Restatement § 324A.[3] See *Kennery v. State*, 2011 VT 121, ¶ 13, 191 Vt. 44, 38 A.3d 35 (summarizing § 324A decisions). In *Kennery*, we found a duty under § 324A where police officers undertook, at the request of a daughter, to check on the condition of her mother who was living alone and did not answer her daughter's phone calls. Plaintiff alleged that the officers negligently breached the duty by going to the wrong house and reporting that the mother was not home, when in reality she had fallen and was lying seriously injured outside of her home unable to get help. In one of our earlier cases, we relied in part upon a statute to define the undertaking of a duty to a third party. *Sabia v. State*, 164 Vt. 293, 299, 669 A.2d 1187, 1191-92 (1995); compare *Andrew v. State*, 165 Vt. 252, 260, 682 A.2d 1387, 1392 (1996) (finding no undertaking of duty in state regulatory inspection of private workplace).

¶ 11. ▇ In this case, at the summary judgment stage, plaintiff did not articulate a viable theory under which the governor of the Lodge[4] had a duty of care towards the Lodge's New Year's Eve

---

[3] To come within § 324A, plaintiff must show that the governor should have recognized that the services involved were "necessary for the protection of a third person" and either (a) "his failure to exercise reasonable care increase[d] the risk of such harm" or (c) "the harm [was] suffered because of reliance of the other or the third person upon the undertaking." Restatement, *supra*, § 324A(a), (c). Because we focus on whether there was a sufficient undertaking, we do not evaluate whether these elements were met.

[4] We note that Merrill, Sr. is a voluntary officer of the Moose Lodge serving without compensation. To the extent that plaintiff alleges that Merrill, Sr.'s personal liability should be premised on his good-faith, but negligent, execution of his official duties as a volunteer officer of a tax-exempt organization, such personal liability is prohibited by statute unless he was grossly negligent or committed an intentional tort. 12 V.S.A. § 5781(1); see also 42 U.S.C. § 14503 (limiting liability for volunteers under federal law). The record does not show whether the Lodge is a tax-exempt organization, and neither party has cited the statute. For these reasons, we do not rely upon it. We note, however, that if the statute applies, this is exactly the type of litigation that the statute was intended to prevent.

This statutory tort immunity for individual volunteers is not mirrored by any tort immunity for tax-exempt organizations in Vermont, so it has no bearing on the

party guests or a duty to control Merrill, Jr.[5] The only description of Merrill, Sr.'s relevant responsibilities as governor in the summary judgment record is contained in the Orientation Guide, a summary of which is set out above. *Supra*, ¶ 6. Nothing in the language of the Guide suggests that the governor has a personal responsibility to prevent the misconduct of others on Lodge property or to warn staff about impending misconduct. Whatever duty Merrill, Sr. undertook as governor, it did not include the duty plaintiff asserted. For that reason, the trial court's summary judgment decision dismissing the claims against Merrill, Sr. is correct in its result.[6]

¶ 12. We also conclude that the court could have gone further and provided the Lodge summary judgment on the claims against it that were premised on a theory of common-law respondeat superior for the action or inaction of Merrill, Sr. The trial court ruled instead that there was "a question at trial as to whether Mr. Merrill [Sr.] should have made more of an effort to notify the bartenders or other security . . . , depending on whether or not lodge officials have any responsibilities during social events when they are 'off duty.' " Our ruling above with respect to Merrill, Sr.'s

Lodge's liability for Merrill, Sr.'s actions. See generally *Foster v. Roman Catholic Diocese of Vt.*, 116 Vt. 124, 137, 70 A.2d 230, 237 (1950) (refusing to adopt the charitable-immunity doctrine for organizations).

[5] Plaintiff originally advanced a theory based on Merrill, Sr.'s obligation to control his son's conduct because the son's criminal probation conditions required him to live with his parents and imposed on them the obligation to report any probation violations. Plaintiff has not renewed this theory on appeal.

[6] The court concluded that an agent, or bar employee, could not be held personally liable when acting on behalf of a principal employer. As plaintiff points out on appeal, this is an incorrect statement of our law of respondeat superior. In *Daniels v. Parker*, we held that agents and principals may be held jointly and severally liable for the negligence of the agent. 119 Vt. 348, 355, 126 A.2d 85, 89 (1956). In responding to the court's decision, plaintiff cites our statement in *Daniels* that "[t]he servant is liable for his own negligence at all times, irrespective of whether his agency position is recognized or not." *Id.* at 354, 126 A.2d at 88 (quotation omitted); see also Restatement (Second) of Agency § 343 (1958) ("An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal . . . or where the principal owes no duty . . . ."). We agree that the ground for the court's ruling was in error. However, we conclude that summary judgment against plaintiff was appropriate.

The court also gave plaintiff an opportunity to augment its summary judgment motion filing to show "the actual responsibilities of 'off duty' lodge officials during events such as the New Year's Eve Party at issue." Plaintiff failed to do this.

duty applies to a duty to warn as well as a duty to act. Nothing in his duties as governor includes a duty to warn Lodge staff about threats of inappropriate conduct by Lodge guests.

¶ 13. ■ The definition of respondeat superior is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." Black's Law Dictionary 1338 (8th ed. 2004). In other words, respondeat superior, or vicarious liability, requires the agent to commit some wrongful act — a tort or contract violation, for instance — for which the principal could also be held liable. See *In re Desautels Real Estate, Inc.*, 142 Vt. 326, 337, 457 A.2d 1361, 1366 (1982) ("The law of vicarious liability has long been recognized in Vermont as but an outgrowth of the maxim respondeat superior. Vicarious responsibility has been defined as an indirect legal responsibility, as for example, the liability of . . . a principal for the torts and contracts of his agent." (citation omitted)). Alleging respondeat superior based on tort thus requires a prima facie showing of all elements of the agent's tort, including the agent's legal duty. See *Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc.*, 163 Vt. 433, 442, 658 A.2d 31, 36 (1995) ("[C]orporate employers are not responsible for damages unless a person covered by the doctrine of respondeat superior is negligent.").

¶ 14. There are some exceptions to this common-law rule, for instance where liability is statutorily imposed on a principal specifically without individual liability for the agent, see, e.g., *Payne v. U.S. Airways, Inc.*, 2009 VT 90, ¶ 21, 186 Vt. 458, 987 A.2d 944 (explaining federal courts' interpretations of Title VII as imposing this kind of liability and declining to adopt the same interpretation of the state statutory analog), or where the duty of the principal is nondelegable, see, e.g., *Dunham v. Chase*, 165 Vt. 543, 543-44, 674 A.2d 1279, 1280 (1996) (mem.) (stating that duty of employer to provide a safe workplace, statutorily imposed, is nondelegable and corporate). An agent is also typically not liable for purely economic harm — but is liable for physical harm — arising out of failure to perform a duty owed to a principal. Restatement (Second) of Agency § 352.

¶ 15. ■ Such exceptions do not apply — and have not been alleged — in this case. In this common-law tort action, if Merrill, Sr. committed no wrongful act or failure to act, the Lodge cannot

be held liable for his actions or inactions. Thus, the trial court should have also awarded the Lodge summary judgment on plaintiff's claims that the Lodge was liable based on Merrill, Sr.'s negligence.

¶ 16. Instead, the court allowed the respondeat superior claims for Merrill, Sr.'s negligence to go to trial. Eventually, the court granted the Lodge judgment as a matter of law on these claims. Plaintiff challenges that decision on appeal, relying primarily on evidence presented at the trial.[7] Plaintiff relies particularly on testimony from Merrill, Sr. that one of his duties as governor, as described in § 35.1 of "The General Laws: The Constitution and Bylaws of Moose International and the Supreme Lodge of the Loyal Order of Moose" [Moose Bylaws], is to "[m]aintain order" at the Lodge.[8] Plaintiff also relies on §§ 48.1 and 48.9 of the Moose Bylaws, admitted at trial, which state that the "government, regulation and control of all social quarters . . . maintained by a lodge shall be vested in a House Committee," that the house committee is chaired by the governor, and that "[d]uring all social functions, it is the duty of the House Committee to enforce and maintain proper decorum at all times." Plaintiff relies on this evidence on appeal to argue that the trial court erred in granting both partial summary judgment in favor of Merrill, Sr. and partial judgment as a matter of law with respect to the Lodge's vicarious liability for Merrill, Sr.'s actions.

¶ 17. ▮ In reviewing the trial court's grant of judgment as a matter of law, we review the evidence in the light most favorable to plaintiff — the nonmoving party — and exclude any modifying evidence. *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 239, 552 A.2d 1201, 1201-02 (1988). Judgment as a matter of law will not be upheld "where there is any evidence fairly and reasonably tending to justify a verdict in the nonmoving party's favor." *Id.* If plaintiff

---

[7] We accept for purposes of this argument that plaintiff may seek review of the judgment as a matter of law against the Lodge despite the fact that the trial court should have granted summary judgment to the Lodge. We are not holding, however, that the Lodge would not have prevailed based on the summary judgment record alone. The Lodge has not urged us to decide this appeal based on the error in ruling on the summary judgment motion.

Under this procedural posture, we recognize that we must analyze the judgment with respect to the evidence at trial, including the additional evidence of Merrill, Sr.'s responsibilities as governor of the Lodge.

[8] It is undisputed that these bylaws are binding on the Lodge.

fails to present evidence on an essential element of the case, however, judgment should be granted for defendant. *Id.* at 240, 552 A.2d at 1202. In addition, although "any evidence fairly and reasonably supporting the nonmoving party's claim" is not an "exacting standard," *Grann v. Green Mountain Racing Corp.*, 150 Vt. 232, 233, 551 A.2d 1202, 1203 (1988) (quotations omitted), "the evidence supporting the claim must be more than a scintilla." *Peterson v. Post*, 119 Vt. 445, 451, 128 A.2d 668, 671 (1957).

¶ 18. As with the summary judgment motion, the motion for judgment as a matter of law centered on the asserted failure of plaintiff to demonstrate that Merrill, Sr. had a duty, of sufficient scope, to impose liability on him for its breach. As we stated above, *supra*, ¶ 7, the motion raises primarily a question of law, not fact.

¶ 19. ▮ In evaluating plaintiff's duty claims, we start with plaintiff's argument that the governor's responsibilities as chair of the house committee are sufficient to impose the necessary duty. We do not have to reach the merits of this claim because plaintiff abandoned during trial his argument that Moose Bylaws § 48.9, stating the house committee's responsibility "to enforce and maintain proper decorum," gave rise to any duty of the governor to act differently than he did. When asked by the court to point to a particular section of the Moose Bylaws that supported the governor's duty, plaintiff's counsel cited only this section. Defense counsel argued briefly that § 48.9 did not mean that the house committee was under an obligation to take action "on the spot," but rather, as summarized by the court, the house committee was obligated only after the fact "to investigate and figure out what went on and to take appropriate remedial action."[9] Moments later, plaintiff's counsel abandoned his argument. The court asked: "Are you suggesting that the [house] committee had some obligation, or members thereof, to step in that evening and do something based on this [§ 48.9]?" Plaintiff's counsel responded, "I did, but I'll withdraw that." In summarizing his argument against the Rule 50

---

[9] This interpretation is also supported by the Lodge Orientation Guide for New Officers, stating that: "Other than the Governor's authority to fine, a member of the House Committee has *no authority in the social quarters as an individual.* In cases of misconduct committed in his presence, he should exercise authority only if the person in charge is unavailable, and he has been so authorized by the House Committee." (Emphasis added.) Even an "authority to fine" may only be exercised ex post facto.

motion, he again stated, "I'll withdraw what I was saying about that specific section [48.9] of the Bylaws." Plaintiff's counsel pointed to no other section of the bylaws in support of his argument at that time. A concession made absolutely without qualification is "a judicial admission and a binding waiver of the issue." *Granite City Coop. Creamery Ass'n v. B & K Cheese Co.*, 115 Vt. 408, 412, 63 A.2d 193, 196 (1949).

¶ 20. ■ Even if plaintiff had not abandoned his theory as based on Moose Bylaws § 48.9 specifically, his general theory that the responsibilities of the house committee were breached, that Merrill, Sr. was responsible for that breach as chair of the committee, and that the Lodge was responsible for Merrill, Sr.'s negligence, has two glaring weaknesses. First, while the house committee may be responsible for maintaining decorum, the bylaws are clear that they must do so through after-the-fact disciplinary action, as the trial court found. There is no authorization for on-the-spot action to stop decorum violations, much less any responsibility for such action. Second, the bylaws state in § 35.8 that the governor is chairman of the house committee "for the sole purpose of presiding at the meetings." Plaintiff would have us infer that because Merrill, Sr. was chair of the house committee, he had some special enforcement responsibility. That inference is inconsistent with the Moose Bylaws.

¶ 21. Plaintiff also relies upon the governor's general responsibility to "[m]aintain order," as stated in the Moose Bylaws § 35.1. The general responsibility statement in that section is followed by twelve descriptions of specific responsibilities in Moose Bylaws §§ 35.2 through 35.14. None of these specific responsibilities relate to preventing misconduct in Lodge facilities or warning staff of the presence of such misconduct. Plaintiff asks us to infer that a general responsibility to "maintain order" includes a responsibility to prevent misconduct in the dining and bar area of the Lodge — and, specifically, to warn the bartenders of the possibility that a fight was brewing.

¶ 22. Plaintiff would have us recognize a very broad and unworkable duty for a volunteer officer. Under the duty plaintiff asserts, the governor would have to be present at all times to monitor the facilities and prevent improper actions. We cannot read the description of the governor's responsibility that broadly. Indeed, his position as chair of the house committee implies that

he acts through that committee and not as a personal enforcer. We read the Moose Bylaw establishing the general responsibilities of the governor as summarizing his responsibilities which are then described in detail in the following sections. In the absence of any specific statement of responsibility describing the duty plaintiff seeks, we cannot find in the general responsibility to "maintain order" either a duty to prevent harm or a duty to warn of impending harm as plaintiff asserts.

¶ 23. Moreover, even if we were to say that the governor's responsibilities as expressed in the Moose Bylaws were generally sufficient to get plaintiff's claim against the Lodge to the jury, plaintiff faces an additional insurmountable obstacle. In its Rule 50 decision the trial court correctly stated that "[t]he evidence establishes without contradiction here that the social patrons of the Lodge, whether they be officers or not . . . are no longer in control. . . . And that once they take a drink they no longer are in the position of having any obligation." The trial court also correctly stated that the evidence showed unequivocally that "Merrill, Sr. was a patron of the social quarters on the evening in question." Thus, even if Merrill, Sr. generally had the duty urged by plaintiff, all the rest of the evidence at trial showed without contradiction that any regular duties he had did not apply during the incident.

¶ 24. Plaintiff has not cited any evidence that would "fairly and reasonably" tend to overcome Merrill, Sr.'s status as a social patron that night. *Seewaldt*, 150 Vt. at 239-40, 552 A.2d at 1201-02. Plaintiff argues instead that an officer's status as a social patron "does not go so far as to prohibit [the officer] from reporting incidents to those who . . . have authority." Plaintiff also claims that because Merrill, Sr. did eventually take some action in response to the complaint about the bickering — in fact, he talked to plaintiff about it — and because he responded when the actual fight broke out, he was not prohibited from taking such responsive action. The absence of a prohibition on Merrill, Sr. from taking some action does not create a duty to take that action. Merrill, Sr.'s status as a social guest in the Lodge dining and bar facility is an additional reason why he had no duty to plaintiff to prevent the incident that caused injury to him and why the Lodge has no liability based on Merrill, Sr.'s inaction.

¶ 25. In sum, we are not convinced to overturn the Rule 50 decision any more than we are convinced to overturn the summary judgment ruling.

*Affirmed.*