NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 117

No. 2018-054

| | |
|---|---|
| Robert A. Skiff, Jr. et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| South Burlington School District | June Term, 2018 |

Robert A. Mello, J.

Paul S. Gillies of Tarrant, Gillies & Richardson, Montpelier, for Plaintiffs-Appellees.

Pietro J. Lynn and Sean M. Toohey of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for Defendant-Appellant.

Garrett A. Baxter, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

Richard T. Cassidy of Rich Cassidy Law, South Burlington, for Amicus Curiae Vermont School Boards Association.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Following the South Burlington School District's decision to discontinue the "Rebels" name for the District's athletic teams, a group of residents in South Burlington presented a petition for a district-wide vote on whether to reinstate the name. The District refused to include the item in a district-wide vote and residents appealed, alleging that the District violated their rights under the Vermont Constitution and seeking an order compelling the District to include the item on the ballot. The trial court denied the District's motion to dismiss, concluding that residents presented sufficient facts to support their request. The District then filed

this interlocutory appeal.  We conclude that neither the applicable statutes nor the Vermont Constitution compels the District to put the petitions to a district-wide vote.  Therefore, we reverse the court's order and remand for entry of judgment for the District.

¶ 2.    The facts, when viewed in the light most favorable to residents, are as follows.[1] Students in South Burlington attended Burlington High School until the 1960s when South Burlington opened its own high school.  The new high school adopted the name "Rebels" for its sports teams after it was used during a game that South Burlington played against Burlington, where students formerly attended school.  Although the name did not originate from a connection to the Civil War, over the years, individual students at times waved the Confederate flag at high-school football games.  The practice was banned by school officials, but some individuals continued to use the name "Rebels" to express racist attitudes and beliefs at the school.

¶ 3.    In 2015, there was a request that the District cease using the name "Rebels" because of the associated racist bigotry and intolerance.  The request was included as an action item on the school-board agenda and the school board engaged in a discussion regarding the topic.  Some board members expressed their view that the moniker was not meant to be racist, but to symbolize those who are critical thinkers and do not necessarily follow the mainstream.  After consideration,

---

[1] In addition to the pleadings, the trial court considered affidavits and exhibits filed by the parties and testimony taken at a hearing on residents' motion to stay in assessing the motion to dismiss.  By considering these materials, the court essentially converted the motion to dismiss to one for summary judgment.  When the court considers matters outside the pleadings in deciding a motion to dismiss, a party is entitled to have the motion treated as one for summary judgment and to be accorded reasonable time to present pertinent and material matters under Vermont Rules of Civil Procedure 12(c) and 56.  Condosta v. Condosta, 139 Vt. 545, 546-47, 431 A.2d 494, 495 (1981) (per curiam); see V.R.C.P. 12(c) (explaining that when matters outside the pleadings are considered, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").  Because the parties were provided with the required notice and an opportunity to respond, there is no need to remand to the trial court to review the motion a second time.  On appeal, we apply the summary-judgment standard in reviewing the trial court's order and we give residents, as the nonmoving party, "the benefit of all reasonable doubts and inferences."  Buxton v. Springfield Lodge No. 679, Loyal Order of Moose, Inc., 2014 VT 52, ¶ 2, 196 Vt. 486, 99 A.3d 171 (quotation omitted).  Our recitation of the facts when viewed in this manner is not an endorsement of their accuracy.

the board reached a consensus to keep the name, but asked the superintendent to suggest ways to rebrand the name to express a positive connotation and not be misunderstood as an endorsement of the Confederacy or slavery. The superintendent presented five recommendations in a January 2017 memorandum, but the Board took no action at that time.

¶ 4. At the school board's meeting on February 1, 2017, the superintendent reported that he was recommending that the "Rebel identifier" be retired. He explained that the recommendation was based on, among other things, shared stories from students, staff, and families, and research about the impact of racial bias on children. He stated that biases existed in the community and that the "Rebels" name felt exclusive to members of the student community. Many residents attended this meeting and it was live-streamed by the local newspaper. Following the superintendent's presentation, the board voted to discontinue using the "Rebels" name.

¶ 5. Soon thereafter, a group of District voters signed a petition requesting a district-wide vote on whether to retain the "Rebels" name. The ballot question read: "Should the name of all South Burlington School District sports teams be the 'South Burlington Rebels' and should the South Burlington City Council and South Burlington School Board be required to make official, retain, and maintain this name for all South Burlington School District sports teams?" The petition was signed by more than five percent of the District's voters and presented to the school board. On May 10, 2017, the school board considered the petition and declined to include the question on the ballot for a vote.

¶ 6. Residents filed an appeal in the Chittenden Superior Court Civil Division under Vermont Rule of Civil Procedure 75, alleging that the refusal violated the right to "instruct" in Chapter I, Article 20 of the Vermont Constitution and seeking a declaratory judgment that a vote on the petition was required. The District moved to dismiss the action on the ground that the school board had discretion not to warn the petitions because they did not concern business delegated to the voters.

3

¶ 7.    The court determined that the purpose of Article 20 was to "assure that the people will have the opportunity to play a central role in determining what is in their own best interests, that their elected representatives will know what their constituents expect of them, and that the Legislature will be available to redress grievances."  The court recounted historical practices of sending instructions to representatives, both nationally and in the state.  The court noted that in Vermont at the municipal level voters gathered on town meeting day to instruct their representatives.  The court interpreted this Court's prior case law on Article 20 as holding that a school board can constitutionally refuse to warn an advisory article if the article "does not at all relate to school district business or any matter falling within school district authority."  The court construed the right to instruct as a collective, rather than individual, right based on the fact that the right to instruct was paired with the right to assemble and concluded that the sole means to effectuate this collective right in a location without a formal town meeting was through a district-wide vote.  The court did not consider whether Article 20 is self-executing because it concluded that several statutes, including 17 V.S.A. § 2642(a)(3)(A), were enacted to effectuate the constitutional protection.  Because the facts construed in the light most favorable to residents showed that the ballot item related to District business and the petition was signed by more than five percent of the voters, the court concluded that residents had presented sufficient facts that, if proven, would entitle them to mandamus relief to compel the District to place the issue on the ballot.  Therefore, the trial court denied the motion to dismiss.

¶ 8.    The trial court then granted the District's motion for interlocutory appeal and stayed the trial court proceedings pending this appeal.

¶ 9.    "On appeal, this Court reviews a motion for summary judgment de novo, employing the same standard as applied by the trial court."  Provost v. Fletcher Allen Health Care, Inc., 2005 VT 115, ¶ 10, 179 Vt. 545, 890 A.2d 97 (mem.).  A party is entitled to summary

4

judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).

¶ 10.    Residents are seeking relief in the nature of mandamus, which is a command from a court requiring an official to perform a specific act. Wool v. Menard, 2018 VT 23, ¶ 11, __ Vt. __, 185 A.3d 577. Mandamus is available only when "the right sought to be enforced is certain and clear." Royalton Taxpayers' Protective Ass'n v. Wassmansdorf, 128 Vt. 153, 159, 260 A.2d 203, 207 (1969). The party seeking such relief must demonstrate that it "has a clear, legal right to the performance of the particular duty at the hands of the [official], and that the law affords no other adequate remedy." Id.

¶ 11.    We conclude that the District did not have a duty imposed by law to include the petitioned article in a district-wide vote. See Bargman v. Brewer, 142 Vt. 367, 369-70, 454 A.2d 1253, 1255 (1983) (explaining that mandamus is to enforce "a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist" (quotation omitted)). Because the article involved nonbinding, advisory questions outside of the electorate's authority to grant or refuse at town meeting, the District was not required to present the article to voters under 17 V.S.A. §§ 2642-2643. Further, we conclude that the "right to instruct" in Article 20 of the Vermont Constitution is an individual right and does not require the District to present a petitioned advisory article to voters. Therefore, we reverse the trial court's order and remand for entry of judgment in favor of the District.

## I. Statute

¶ 12.    Residents do not assert a violation of 17 V.S.A. § 2642 and § 2643 directly, but their entire argument is based on their assertion that the statutory provisions are meant to effectuate their constitutional rights. Residents argue that they have a constitutional right to use 17 V.S.A. § 2642(a) and § 2643(a) to bring nonbinding petitioned articles for a district-wide vote because

5

otherwise they assert that there is no mechanism for them to effectuate their constitutional right to instruct the Board as provided in Article 20 of the Vermont Constitution.

¶ 13. In a subchapter in Title 17 entitled "Town Meetings and Local Elections in General," there are statutory provisions regarding the warning and notice required in advance of town meeting. The statute states that the warning for an election must, in separate articles, "specifically indicate the business to be transacted" and "shall also contain any article or articles requested by a petition signed by at least five percent of the voters of the municipality." 17 V.S.A. § 2642(a)(3)(A). These laws regarding petitioned articles and town voting also apply to school districts. 16 V.S.A. § 551.

¶ 14. This Court has on several occasions considered the circumstances in which the statute obligates a town to put petitioned articles to a district-wide vote. In sum, those cases, described in more detail below, hold that a municipality (or a school board) has discretion to refuse to include a petitioned article in a town-meeting vote if the subject matter of the article concerns a matter outside of the voters' authority.

¶ 15. We begin with Royalton Taxpayers' Protective Association v. Wassmansdorf, 128 Vt. 153, 260 A.2d 203 (1969), in which the petitioners filed suit seeking an order directing the town selectboard to warn a special town meeting under a prior version of § 2642(a).[2] The petitioners argued that the town was required by statute to hold a special town meeting for a vote on whether to reject the grand list submitted by the town listers because the matter had been duly petitioned by five percent of the voters. This Court noted that the power to create the grand list is given to the listers, and the petitioners had not presented authority "to show that a town meeting has the power to reject a grand list, once the same has been lodged by the listers with the town

---

[2] Wassmansdorf and cases following it in the late 1960s and early 1970s involved a prior version of the statute, but "the language of those statutes was sufficiently similar to 17 V.S.A. § 2642(a) to warrant a similar interpretation here." Clift v. City of S. Burlington, 2007 VT 3, ¶ 6 n.*, 181 Vt. 571, 917 A.2d 483 (mem.).

clerk, which the article impliedly admits was done." Id. at 159, 260 A.2d at 206-07. This Court held that the intent of the statute was not to compel a special meeting for a vote that would be for a "useless, frivolous or unlawful purpose." Id. at 160, 260 A.2d at 207. Therefore, we concluded that the statute required a vote on a petition "when the purpose stated in such petition set forth a clear right which was within the province of the town meeting to grant or refuse through its vote." Id. Because "the resulting votes [from the petitioned special meeting] would be nugatory, unavailing and void of any determination of right," we denied the request for mandamus relief.

¶ 16.     In Whiteman v. Brown, 128 Vt. 384, 264 A.2d 793 (1970), voters presented a petition to the school district, seeking to hold a special meeting to hold a vote on whether to retain an auditor. This Court explained that the statutory "duty to warn relates to 'business to be transacted' " and therefore if an article does not present proper business for a town meeting the statute does not compel its inclusion. Id. at 387, 264 A.2d at 795 (quoting statute in effect at that time). Because the authority to employ auditors was a matter within the district's, rather than the voters', control, this Court denied the voters' request for mandamus.

¶ 17.     In Pominville v. Addison Central Supervisory Union-Middlebury Union High School District #3, 154 Vt. 299, 575 A.2d 196 (1990), residents petitioned the school district to include an article proposing a lower budget than the one proposed by the board. The board declined to include the article on the warning for the town-meeting vote. Residents then filed suit seeking to compel the inclusion of the article. This Court concluded that the board properly refused to include the article because there was an existing process for rejecting and revising the school budget and that including the alternate proposal for voters' consideration would mean the review process in the statute would be "ignored and the will of the Legislature defeated." Id. at 302, 575 A.2d at 197.

¶ 18.     More recently, in Clift v. City of South Burlington, 2007 VT 3, this Court reiterated the discretionary authority granted to towns and districts regarding petitioned articles under the

7

statute. In that case, city voters sought an order requiring the city to include an advisory article urging the city council to ask state legislators to enact legislation concerning parental notification prior to abortion for minors. The city declined to include the article and the voters appealed. We cited Wassmansdorf and its progeny for the proposition that the statute compels municipalities to present an article to voters "only when 'the purpose stated in such petition set[s] forth a clear right which [i]s within the province of the town meeting to grant or refuse through its vote.' " Id. ¶ 6 (quoting Wassmansdorf, 128 Vt. at 160, 260 A.2d at 207). We concluded that the petition sought in Clift was indistinguishable from these other cases because neither the city's voters nor the city council was obligated to advise the Legislature on pending legislation. Id. ¶ 7. We emphasized that "[a]llowing the City discretion to warn advisory articles, such as the one presented by petitioners, furthers the Council's ability to balance the efficient transaction of city business with the provision of a local forum for discussing state and national issues." Id.

¶ 19. Taken together, these cases demonstrate that the statutory duty of the board to warn items concerning the "business to be transacted," 17 V.S.A. § 2642(a)(2), means that petitioned items of business must be within the authority of voters to decide at town meeting. In the context of a school district, the petitioned items of business must be within the authority of voters to decide at a district meeting.

¶ 20. Residents argue that the issue they sought to put to voters is consistent with Wassmansdorf because the advisory vote would inform the school board and thus would not be "useless, frivolous or unlawful." 128 Vt. at 160, 260 A.2d at 207. They contend that the reason the advisory petition in Clift was not required to be put to voters was because it was unrelated to town business, not because the result of the advisory vote would have had no binding effect. Accepting this argument, the trial court distinguished Wassmansdorf and the cases following it, explaining residents "are not seeking to have the voters take an action that, under the law, can only be taken by someone else. To the contrary, [residents] seek only an opportunity for the voters to

8

instruct their own School Board to do something that the School Board clearly has the authority to do, namely, change the name of its sports teams back to the 'Rebels.' "

¶ 21.    This is too broad a reading of the word "useless" used in Wassmansdorf.  The case explains that the town had no duty to hold a special meeting where the results would be "useless, frivolous or unlawful" and further elaborates that a town cannot be compelled through mandamus to include petition items that would produce results that are "nugatory, unavailing and void of any determination of right."   128 Vt. at 160, 260 A.2d at 207.   This latter language clarifies that "useless" as used in the case means something that would have no binding effect.  In other words, officials cannot be compelled to include items for a town vote where the result of the vote is not legally binding because it is beyond the authority of the voters to decide at town meeting.

¶ 22.    This interpretation is consistent with the construction of the statutory language "the business to be transacted," 17 V.S.A. § 2642(a)(2), in the several other cases described above that limit the petition requirement to matters over which voters have authority to act.  The statute does not include a right to include articles for a vote over which voters may have an opinion, but ultimately do not have the power to decide.  Certainly, a town or school district can include a petitioned, nonbinding, advisory question on the ballot, but it is not required to do so under the statute.  This is particularly true in an action for mandamus relief where relief is available only when "the right sought to be enforced is certain and clear." Wassmansdorf, 128 Vt. at 159, 260 A.2d at 207.  To grant mandamus, the right to include the matter for a vote must be clear.[3]

¶ 23.    To suggest that "usefulness" is the touchstone of the legal test, and that an advisory vote is not "useless" because it will inform town officials, would lead to a result at odds with our

_____

[3]  In Baird v. Town of Berlin, 126 Vt. 348, 231 A.2d 110 (1967), a petition was filed to hold a special meeting on the issue of whether to reconsider a prior vote authorizing purchase of new land and this Court concluded that the selectboard was bound to act on the petition under the prior version of the statute.  This holding is entirely consistent with our construction of the modern statute in that the matter to be voted on in Baird—purchasing land for building a school—was within the control of voters.

prior cases in which the petitions could have similarly been viewed as giving useful information about a topic to elected town officials. This point is well illustrated by Kirchner v. Giebink, 150 Vt. 172, 552 A.2d 372 (1988), in which the plaintiffs submitted a petition for a town vote on whether to nullify the selectboard's decisions regarding the town sewer system. Like residents' claim in this case, the petition could have provided information to the selectboard on how the town voters felt about the town sewer project, but this Court held that the selectboard acted within its authority in declining to include the petitioned item for a vote. Relying on Wassmandorf, this Court explained that the town selectboard did not have a duty to call a meeting on the plaintiffs' petition because the result of any vote would have no effect. "If the [selectboard] had the power to make the agreement, then it is legally binding and the voters could not undo it. Thus, the meeting would be useless under Wassmansdorf." Id. at 178, 552 A.2d at 376. This illustrates that "useless" as used in Wassmansdorf means without legal effect.

¶ 24. Here, the item—the name of the District's sports teams—that residents sought to include in a district-wide vote is not a matter within voters' authority to decide at a district-wide meeting. The powers of the electorate are delineated by statute and include discrete items, including voting for the annual salaries for school-board members and authorizing the amount of money to be expended. 16 V.S.A. § 562. The electorate is neither given authority to specifically designate the name of school teams nor general authority over that area. In contrast, the school board has broader, more general powers, including determining "the educational policies of the school district" and taking "any action that is required for the sound administration of the school district." Id. § 563(1), (2). Residents recognize that the power to select a moniker for the school sports teams lies with the school board and have characterized their petition as seeking a nonbinding, advisory vote on the issue.[4] Because the petition sought a vote on an item that was

---

[4] The language of the petition itself appears mandatory and does not indicate that the vote is intended to be advisory or nonbinding. The petition includes the question "Should the name of

10

outside of the voters' authority to decide and its result would have no binding effect, the District was not required by statute to include it in a district-wide vote, but could have elected to do so if it wished.

## II. Constitutional Right to Instruct

¶ 25.   The Vermont Constitution includes a "Right to assemble, instruct and petition," which provides "That the people have a right to assemble together to consult for their common good—to instruct their Representatives—and to apply to the Legislature for redress of grievances, by address, petition or remonstrance." Vt. Const. ch. I, art. 20.  Residents argue that even if the statute itself does not compel the District to put the petitioned article to a vote, the District was required to include it to effectuate residents' right to instruct in Article 20 of the Vermont Constitution.  We conclude that Article 20 does not provide a collective right to vote on advisory articles that "instruct" a municipality or school board, and to the extent that Article 20 contains an individual right to inform one's representatives, residents have failed to allege any deprivation of that right in this case.[5]

¶ 26.   In Clift v. City of South Burlington, the voters argued that even if the Town was not required by statute to include their advisory petitioned article, "the City's action in refusing to warn the advisory article was a violation of petitioners' right to assemble under Chapter I, Article

___

all South Burlington School District sports teams be the 'South Burlington Rebels' and should the South Burlington City Council and South Burlington School Board be required to make official, retain, and maintain this name for all South Burlington School District sports teams?"  (Emphasis added.)  The petition then explains that a yes vote means "The name of all South Burlington School District sports teams will be 'South Burlington Rebels.' "  Nonetheless, for purposes of resolving the motion for summary judgment, we accept residents' characterization of the petition as advisory.

[5]   Amicus curiae the Vermont League of Cities and Towns argues that the right to instruct in Article 20 applies solely to informing the representatives of the General Assembly because the constitutional provision refers to "Representatives" with an upper-case "R" as opposed to "representatives" with a lower-case "r," which is used in other places in the Vermont Constitution. Because we conclude that Article 20 does not provide an enforceable right to compel a district-wide vote in this case, we do not reach this question.

11

20 of the Vermont Constitution." 2007 VT 3, ¶ 9. This Court summarily rejected the voters' argument that "a town-meeting vote on a petitioned advisory article is a constitutional right." Id.

¶ 27. Nonetheless, residents in this case attempt to distinguish Clift and assert that the right to instruct in Article 20 includes the right to have a district-wide vote on petitioned, nonbinding articles related to town business.[6] Residents assert that Article 20 guarantees access to elected officials and that because some towns do not have a traditional town meeting at which residents can discuss "other business," there must be an opportunity to instruct officials through inclusion of nonbinding articles in a district-wide vote. Residents invite us to look at various historical sources to reach this conclusion. See Chittenden Town Sch. Dist. v. Dep't of Educ., 169 Vt. 310, 320, 738 A.2d 539, 547 (1999) (explaining that in construing state constitutional provisions, this Court relies on several sources of information: "examination of the text, historical analysis, sibling state constructions of similar provisions, and analysis of economic and sociological materials").

¶ 28. We need not delve deeply into the contours of the right to instruct in Article 20 to conclude that it does not entitle residents to mandamus relief in this case. To the extent that an enforceable right exists under Article 20, it is an individual right and not a collective one. This is evident from the language of the Vermont Constitution and our prior cases. Article 20 is part of Chapter I of the Vermont Constitution entitled "A Declaration of the Rights of the Inhabitants of the State of Vermont." This heading signifies that the rights that follow are personal to Vermont's inhabitants. Moreover, Article 20 begins with the preface "That the people have a right to," which is indicative of a personal right. Indeed, we have construed other articles in Chapter I, which begin

---

[6] Residents' constitutional argument is intertwined with their statutory argument. They have not fully explained how the statutory requirements relate to the constitutional rights alleged. For example, they offer no answer to the question of whether the statutory requirement that a petition be signed by five percent of the voters is also the threshold to trigger the constitutional right alleged.

with the same language "That the people have a right to," as providing individual rights. See State v. Rheaume, 2005 VT 106, ¶ 8, 179 Vt. 39, 889 A.2d 711 (considering whether law enforcement violated defendant's individual right to be free from unreasonable intrusions under Article 11); Shields v. Gerhart, 163 Vt. 219, 227, 658 A.2d 924, 930 (1995) (concluding that Article 13 "sets forth a single, specific right of the people to make themselves heard, a fundamental characteristic of democratic government"). Finally, to the extent our prior cases have construed rights embodied in Article 20, this Court has viewed the rights provided therein as individual ones. See, e.g., In re Devenport, 129 Vt. 546, 559-60, 283 A.2d 452, 458-59 (1971) (holding that school board's decision to fire teacher because she was involved in assisting students in drafting petition to seek permission to walk out violated her individual right to petition government guaranteed by First Amendment to U.S. Constitution and Article 20 of Vermont Constitution).

¶ 29.    Residents have not alleged that the District has denied them individually the right to instruct their school-board members.  Indeed, the facts construed in a light most favorable to residents demonstrate that residents individually had many opportunities to instruct individual board members and the District as a whole on their opinion about the "Rebels" name.  Residents also have not shown how the relief that they are seeking—inclusion of their advisory article in a district-wide vote—will effectuate their individual right.  Therefore, even assuming that Article 20's right to "instruct" is self-executing, we conclude that it does not entitle residents to the mandamus relief they are seeking.

¶ 30.    Residents' desire to inform their school board on matters the school board is vested with deciding does not equate to a right to a district-wide, advisory vote on the issue.  The Vermont Constitution creates a representative, not a direct, democracy.  See Vt. Const. ch. II, § 2 ("The Supreme Legislative power shall be exercised by a Senate and a House of Representatives."). The power of the people is delegated to government officials, who are "at all times, in a legal way, accountable to them."  Vt. Const. ch. I, art. 6.  In the case of local school boards, "school directors

13

are public officials who derive their power from the law." <u>Buttolph v. Osborn</u>, 119 Vt. 116, 119, 119 A.2d 686, 688 (1956). The right of individuals to directly vote on and decide issues is limited in this representative form of government. If school officials are acting within the powers designated to them by the Legislature, they have discretion to act as they deem best. Here, the Board had discretion whether to submit the advisory ballot item to a district-wide vote. The recourse for voters is not through petition, but election. If the public is dissatisfied with the performance of school directors, "[t]hey may, in due course, replace their school directors at the end of their respective terms." <u>Id</u>. at 123, 119 A.2d at 690; see 16 V.S.A. § 423 (providing that "electorate" votes to elect directors of school board).

<u>Reversed and remanded for entry of judgment for defendant</u>.

FOR THE COURT:

Associate Justice

14